FILED
IN CLERKS OFFICE

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

JUL 30 P 12: 44

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| ROBERT BRIDDELL | CIVIL ACTION NO. |
| Plaintiff | 04-40146 |
| v. | |
| SAINT GOBAIN ABRASIVES, INC. | |
| Defendants | |

July 29, 2004

**COMPLAINT**

1. This is an action for damages, declaratory and injunctive relief, and attorney's fees brought pursuant to Title VII of the Civil Rights Act of 1964, (Title VII) 42 U.S.C. § 2000e, et seq., as amended by the Civil Rights Act of 1991, and pursuant to the Civil Rights Act of 1871, 42 U.S.C. §1981 et seq.

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331 and 1343.

3. Venue in this district is appropriate pursuant to 28 U.S.C. §1391, because this is the district in which the defendants reside and in which the cause of action arose.

4. The plaintiff, Robert Briddell, is a citizen of the United States, actually residing in Worcester, MA. At all times relevant to this Complaint, the plaintiff was an employee of the defendant, as that term is defined by Title VII, 42 U.S.C. §2000e(f), and 42 U.S.C. §1981 et seq.

RECEIPT # 4043 77
AMOUNT $ 150.00
SUMMONS ISSUED ✓
LOCAL RULE 4.1 ✓
WAIVER FORM ✓
MCF ISSUED ✓
BY DPTY. CLK. _____
DATE 7-30-04

- 2 -

5. Plaintiff Robert Briddell's race is African-American.

6. Defendant, Saint Gobain Abrasives, Inc., hereinafter "defendant" or "Saint Gobain" is a corporation organized and existing under the laws of the State of Massachusetts, engaged in a business affecting commerce and employing more than 15 employees. The defendant employs over 500 employees. At all times relevant to this complaint, the defendant has been an employer within the meaning of Title VII, 42 U.S.C. §2000e(b), and 42 U.S.C. § 1981 et. seq. Defendant has an office and principal place of business at One New Bond Street, Worcester, MA 01615.

7. On or about November 21, 2002, the plaintiff filed administrative charges of discrimination on the basis of his race and color and claims of retaliation for opposing discrimination with the Equal Employment Opportunities Commission.

8. The plaintiff has received a Notice of Right to Sue from the Equal Employment Opportunity Commission.

9. The plaintiff has fulfilled all administrative prerequisites necessary to maintain this action.

**FACTS**

10. The plaintiff was hired by the Norton Company in 1985. He was initially employed as a material handler in the bonded and superabrasive division. However, he was quickly promoted to the position of mixer in the same department. The plaintiff remained in the position of mixer until early 1988. His performance in these positions was satisfactory or better.

11. In 1991, the defendant acquired the Norton Company and became the plaintiff's employer.

- 3 -

12. On information and belief, at the time that the defendant acquired the Norton Company and became the plaintiff's employer, the bonded and superabrasives divisions had a production and maintenance workforce of approximately one thousand employees; including approximately 100 persons of color. Over 50 division employees were African American, including Mr. Briddell.

13. On information and belief, at the time that the defendant became the plaintiff's employer, there were approximately 39 persons with supervisory authority in the bonded and superabrasives divisions, including at least three African Americans.

14. After the defendant became the plaintiff's employer, the plaintiff began to notice a change in treatment by the defendant with respect to African American employees. On information and belief, the defendant did not promote or train African American employees in the same numbers as similarly situated white employees.

15. On information and belief, the three African American supervisors in the bonded and superabrasives divisions soon left. On information and belief, the defendant replaced them with white employees.

16. On information and belief, the defendant has never promoted an African American or Hispanic employee to the position of supervisor in the bonded and superabrasives divisions.

17. In February 1998 the plaintiff was promoted to the position of truing operator. On information and belief, this is a difficult position and employees often need extended training. During this extended job training, employees are paid at a higher "training position" pay rate.

- 4 -

18.  Although the plaintiff was given the duties of the truing position, the defendant did not initially pay the plaintiff the same training position pay that was paid to similarly situated white operators. In fact, the plaintiff did not receive his raise for approximately 60-90 days. It was not until the plaintiff indicated his intention of notifying the NAACP of the defendant's discriminatory practices that the defendant agreed to pay the plaintiff the same rate as the white operators, and to provide the increase retroactive to the date of the plaintiff's promotion to truing operator.

19.  The plaintiff, like many of his similarly situated white co-workers, initially had some difficulty learning the intricacies of his new position. However, by March 1999, the plaintiff's performance as a truing operator was satisfactory or better.

20.  In both 1999 and 2000, the defendant evaluated the plaintiff as meeting expectations in all areas.

21.  In February 2000, the defendant also explained that Mr. Briddell had all of the necessary skills and experience to perform the duties of the truing operator position.

22.  In 2000, the plaintiff was transferred to another job in truing when his truing operator job was outsourced to Mexico. The plaintiff began training on this new job. The defendant began accusing the plaintiff of numerous performance problems, and, in July 2000, demoted him to the position of mixer.

23.  Although the plaintiff believed that his demotion was improper, he decided to accept the demotion. He returned to his position of mixer in July 2000.

24.  During the plaintiff's first year back as a mixer, his performance was consistently good. He was not disciplined in any way.

25. During the summer of 2001, the defendant was the subject of a Union organizing drive by the International Union, United Automobile Workers, Aerospace and Agricultural Implement Workers of America (hereinafter "the UAW" or "the Union"). The plaintiff became convinced that African American workers would receive better treatment in a unionized environment and decided to support the UAW.

26. The plaintiff began to speak out to other employees about the benefits that Black African employees, African American employees and Hispanic employees would receive in a unionized facility. He spoke openly about the connection between the labor movement and the civil rights movement. He also spoke openly about the discriminatory treatment he believed African American employees faced at the defendant's facility and about the ways in which a Union could help to ensure that the defendant would no longer be able to freely discriminate against African American employees.

27. On information and belief, the defendant vehemently opposed the Union, and was particularly upset with the plaintiff for raising issues of discrimination within the plant and for suggesting that such discrimination could be addressed by the UAW.

28. The plaintiff also spoke directly to company officials about his belief that the defendant engaged in discriminatory treatment of African American employees. The plaintiff spoke with Stephen Stockman, Vice President of Bonded Abrasives, North America and Richard Zeena, Human Resource manager about the unfair treatment of minorities by the defendant. Among other things, the plaintiff informed them of his belief that minority employees were denied the promotional opportunities granted to similarly situated white employees.

- 6 -

29. On Information and belief, the defendant did not investigate the plaintiff's complaints of discrimination.

30. On information and belief, during the summer of 2001, the company held separate meetings for employees from Africa to discourage those employees from voting for the Union. During company meetings, and on the shop floor, the plaintiff spoke out about his opposition to this practice, accusing the company of segregation. The plaintiff informed his co-workers and various company officials that by holding separate meetings for African employees, the company was practicing the same type of segregation that he and other African Americans had fought so hard to extinguish.

31. Shortly after the plaintiff began complaining of discrimination, the defendant began to accuse him of performance problems. The defendant made these accusations despite the fact that, on information and belief, the plaintiff's performance as a mixer was equal to or better than similarly situated white co-workers. On information and belief, the defendant falsely criticized the plaintiff for poor performance and/or engaged in a practice of disparate treatment with respect to performance, because of the plaintiff's race and color and/or because of the plaintiff's complaints of discrimination.

32. For example, in mid-September 2001, the plaintiff was approached on the production floor by his immediate supervisor, William Tivlan, who said that he was getting complaints that the plaintiff was putting too much mix in his pans. On information and belief, this was not true. Despite this, Tivlan subjected the plaintiff to greater scrutiny than his co-workers, watching the plaintiff work. The plaintiff's work was satisfactory or better, and Tivlan ultimately observed that all of the pans were

- 7 -

coming out at approximately 45 pounds, the proper weight. Tivlan commented that there did not seem to be a problem. Nevertheless, a day or two later, on September 20, 2001, Tivlan gave the plaintiff a "written reminder" signed by a day shift supervisor, Jeff Clark, for failing to follow proper procedure by overfilling pans. To the best of the plaintiff's knowledge, these criticisms were false.

33. The plaintiff objected to this discipline, pointing out that Tivlan had watched the plaintiff and could confirm that he was doing his job properly. Tivlan said that he had been instructed to give him the warning. He also showed the plaintiff some paperwork which alleged that pans had been overfilled by as much as 16 or 17 pounds.

34. On October 4, 2001, Clark and Tivlan gave the plaintiff another warning, alleging that the plaintiff had again overfilled pans and had failed to sign documentation on his work. To the best of the plaintiff's knowledge these criticisms were false. In addition, on information and belief, the defendant did not discipline similarly situated white employees and/or employees who had not raised issues of race discrimination, for such errors.

35. On October 4, 2001 the plaintiff informed his supervisor that he believed he was being subjected to illegal discrimination, with respect to the defendant's discipline of him. The defendant never investigated this complaint.

36. On or about October 9, 2001, the defendant suspended the plaintiff, allegedly for failing to complete paperwork. On information and belief, similarly situated white employees, and/or employees who had not complained of discrimination, were not suspended, or even disciplined, for failing to sign the same type of paperwork. In fact, the defendant's usual practice when someone failed to fill out paperwork was to

- 8 -

simply return the paperwork to the employee and remind him to fill it out.

37. The plaintiff began keeping close watch on the weight of his pans. He stopped adding mix waste to the full pans, which had been longstanding Company practice but can result in overfilling of pans.

38. On January 4, 2002, Tivlan gave the plaintiff a memorandum from the Human Resources Manager, Richard Zeena, dated January 3, reading,

> "On January 3, 2002 you were notified by Bill Tivlan that the previous evening that you had made a mix that weighed in excess of 68 pounds."

However, no such discussion had occurred with Tivlan. The plaintiff attempted to talk to Tivlan about this. However, Tivlan indicated that he was unable to respond to his questions about the note and did not know what it was about.

39. The mix, which the defendant claimed was too heavy, had been sitting on a truck, out of the plaintiff's control, for more than 12 hours before the overweight mix was supposedly discovered. To the best of the plaintiff's knowledge, the mix, when completed by the plaintiff, was not overweight. In addition, similarly situated white employees, and/or employees who had not complained of discrimination, were not disciplined for heavy mixes. In fact, on or about January 5, 2002, the plaintiff discovered 4 ½ truck loads of pans that were overweight. No one was disciplined with respect to those loads.

40. The plaintiff again complained to the defendant that he was being treated unfairly. His complaint was not investigated.

41. On or about January 30, 2002 the defendant suspended the plaintiff, allegedly for producing a contaminated mix and for failing to complete paperwork.

To the best of the plaintiff's knowledge, these criticisms were false. Moreover, on information and belief, white employees, and/or employees who had not complained of discrimination, were not disciplined for such errors.

42. On February 6, 2002, the defendant terminated the plaintiff, allegedly due to poor performance. However, the defendant has retained white employees (and employees who had not complained of discrimination) who had far more serious performance problems than the plaintiff allegedly had and/or who had engaged in intentional misconduct.

43. As set forth above in this complaint, the defendant falsely criticized the plaintiff, subjected him to closer scrutiny than his similarly situated co-workers, sought out reasons to discipline him and subjected him to different performance standards than similarly situated employees.

44. On information and belief, the defendant engaged in the above conduct because of the plaintiff's race, because the plaintiff had complained about what he reasonably believed were discriminatory practices, and because the plaintiff had spoken to his co-workers about the connection between unionization and ending these discriminatory practices.

45. On information and belief, no investigation of the plaintiff's complaints of discrimination and retaliation took place prior to his termination.

46. On information and belief, the plaintiff's duties were reassigned to non-African-American employees and/or employees who had not complained of discrimination.

- 10 -

47. The defendant's articulated reason for discharging the plaintiff is pretextual.

48. After his termination, the plaintiff had money in the credit union, located on the defendant's property. After his termination, the plaintiff attempted to go to the credit union. The defendant ordered the plaintiff off the defendant's property, and instructed him that he could not come onto the property to withdraw his money from the credit union. The defendant had security escort the plaintiff off the property. This was humiliating to the plaintiff.

49. On information and belief, the defendant did not order white employees who had been terminated for poor performance off the property, and permitted them access to the credit union.

## COUNT ONE (Title VII Discrimination)

1. Plaintiff repeats, realleges and incorporates herein by reference paragraphs 1-49.

50. By the conduct described above, the defendant discriminated against the plaintiff because of his race, color and/or ethnicity in violation of Title VII of the Civil Rights Act of 1964 (Title VII) 42 U.S.C. § 2000e, et seq., as amended by the Civil Rights Act of 1991.

51. The defendant's actions as described above were intentional and were engaged in with malice or with reckless indifference to the federally protected rights of the plaintiff.

- 11 -

52. On information and belief the stated reasons for the defendant's conduct are pretextual, and the plaintiff's race, color and/or ethnicity was a motivating factor.

53. As a result of the foregoing, the plaintiff has suffered and continues to suffer a loss of employment, lost compensation, seniority and fringe benefits, and other rights, privileges and conditions of employment, an interruption of his career and consequent loss of employment opportunities, pain and suffering, anxiety, humiliation and shame and other emotional distress.

**COUNT TWO**   (Title VII Retaliation)

1. The plaintiff hereby repeats, realleges and incorporates paragraphs 1-53 above.

54. By the conduct described above, the defendant retaliated against the plaintiff because of his complaints of discrimination and/or his opposition to what he reasonably believed were discriminatory practices, in violation of Title VII, 42 U.S.C. §2000e, et seq.

55. The defendant's actions as described above were intentional and were engaged in with malice or with reckless indifference to the federally protected rights of the plaintiff.

56. On information and belief the stated reasons for the defendant's conduct are pretextual, and the plaintiff's protected activity was a motivating factor.

57. As a result of the foregoing, the plaintiff has suffered and continues to suffer, a loss of employment, lost compensation, seniority and fringe benefits, and other rights, privileges and conditions of employment, an interruption of his career and

- 12 -

consequent loss of employment opportunities, pain and suffering, anxiety, humiliation and shame and other emotional distress.

**COUNT THREE     Violations of 42 U.S.C. §1981, as amended**

1.     The plaintiff hereby repeats, reincorporates, and realleges paragraphs 1 through 57, above.

58.     By the conduct described above, the defendant has engaged in a continuing course of discrimination against the plaintiff on the basis of his race and color, and deprived the plaintiff of his contractual and equal rights, and further deprived the plaintiff of benefits as enjoyed by white persons, in violation of 42 U.S.C. §1981, as amended.

59.     The defendant's actions as described above were intentional and were engaged in with malice or with reckless indifference to the federally protected rights of the plaintiff.

60.     As a result of the foregoing, the plaintiff has suffered and continues to suffer a loss of employment, lost compensation, seniority and fringe benefits, and other rights, privileges and conditions of employment, an interruption of his career and consequent loss of employment opportunities, pain and suffering, anxiety, humiliation and shame and other emotional distress.

## **PRAYER FOR RELIEF**

WHEREFORE, the plaintiff prays that this Court:

1. Order defendant, its agents, successors and assigns to cease and desist from discriminating against the plaintiff;

2. Order reinstatement of the plaintiff to his former position, or to its substantial equivalent, and be made whole for all lost wages and benefits;

3. Award plaintiff compensatory damages;

4. Order restoration to plaintiff of seniority and fringe benefits;

5. Award plaintiff punitive damages;

6. Award plaintiff attorneys fees and costs for bringing this action; and

7. Such other legal or equitable relief as the Court deems appropriate.

## REQUEST FOR TRIAL BY JURY

Plaintiff requests a trial by jury on all counts of the complaint.

THE PLAINTIFF,

By: *(signature)*
Thomas W. Meiklejohn ct08755
Mary E. Kelly ct07419
Livingston, Adler, Pulda,
Meiklejohn & Kelly P.C.
557 Prospect Avenue
Hartford, CT 06105-2922
(860) 233-9821

*(signature)*
Darragh N. Kasakoff, Esq.
Seder & Chandler
339 Main Street
Worcester, MA 01608
(508) 757-7721

JS-44
(Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Robert Brickell

## DEFENDANTS
Saint Gobain Abrasives, Inc.

2004 JUL 30 P 12: 44

DISTRICT OF MASS.

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Thomas W. Meiklejohn, 557 Prospect Ave. Hartford CT 06105-2922 (860)233-9821; Darragh Kasakoff, 339 Main St., Worc. MA 01608 (508)757-7721

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)
- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

(Civil Rights - ☒ 442 Employment)

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Action for damages for violation of employment rights & civil rights pursuant to 42 USC Sec 2000(e) et seq & 42 USC Sec 1981 et seq

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A CLASS ACTION ☐ UNDER F.R.C.P. 23
DEMAND $ _____
JURY DEMAND: ☒ YES ☐ NO

## VIII. RELATED CASE(S) IF ANY
JUDGE _____ DOCKET NUMBER _____

DATE _____ SIGNATURE OF ATTORNEY OF RECORD _____

FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) **Robert Briddell v. Saint Gobain Abrasives, Inc.**

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

    ___   I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

    _X_   II.   195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,    *Also complete AO 120 or AO 121
                740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.       for patent, trademark or copyright cases

    ___   III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
                315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
                380, 385, 450, 891.

    ___   IV.   220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
                690, 810, 861-865, 870, 871, 875, 900.

    ___   V.    150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

    **N/A**

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

    YES ☐   NO ☒

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)

    YES ☐   NO ☒

    If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

    YES ☐   NO ☐

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

    YES ☐   NO ☒

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

    YES ☒   NO ☐

    A.  If yes, in which division do all of the non-governmental parties reside?

        Eastern Division ☐    Central Division ☒    Western Division ☐

    B.  If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

        Eastern Division ☐    Central Division ☐    Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

    YES ☐   NO ☐

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME **Thomas W. Meiklejohn**
ADDRESS **557 Prospect Ave., Hartford CT 06105-2922**
TELEPHONE NO. **(860) 233-9821**

Coversheetlocal.wpd - 10/17/02