**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| ROBERT BRIDDELL | : | CIVIL ACTION NO. |
| Plaintiff | : | 4:04 CV 40146 (FDS) |
| | : | |
| v. | : | |
| | : | |
| SAINT GOBAIN ABRASIVES, INC. | : | |
| | : | |
| Defendants | : | September 19, 2005 |

**PLAINTIFF'S MOTION TO COMPEL**

I.    **Introduction**

This cases arises out of Defendant, St. Gobain Abrasive, Inc's, (hereinafter "the Defendant" ) termination of  long term employee Robert Briddell, (hereinafter "Briddell" or "the Plaintiff").    The Plaintiff contends that he was terminated because of his race and/or complaints of discrimination in violation of Title VII of the Civil Rights Act of 1964, (Title VII) 42 U.S.C. § 2000e, et seq., as amended by the Civil Rights Act of 1991, and the Civil Rights Act of 1871, 42 U.S.C. §1981 et seq. And 42 U.S.C.  §1981. Specifically, the Plaintiff contends that the Defendant had a practice of failing to promote African-American employees  in the Bonded and Superabrasives divisions in the same manner as white employees[1].    He claims that he complained about this discrimination to  Company officials, including  Stephen Stockman, Vice President of

---

[1] The Plaintiff also contends that he was initially denied a promotion due to his race, and was later denied the same training pay as white operators.  He contends that it was not until he indicated his intention of notifying the NAACP of the Defendant's discriminatory practices that the Defendant agreed to promote him and pay him the same rate as the white operators.

Bonded Abrasives, North America and Richard Zeena, Human Resource manager.[2] He also complained about the Defendant's conduct in holding segregated meetings for black employees from Guyana.

The Plaintiff contends that shortly after he began complaining of discrimination, the Defendant began to falsely accuse him of performance problems. The Plaintiff contends that he was falsely criticized, subjected to closer scrutiny and  subjected to different performance standards than similarly situated employees who were not African-American and/or who had not complained of discrimination and segregation. The Defendant has denied these allegations and has claimed that the Plaintiff's performance was inferior to that of other employees.

Discovery in this case has been lengthy and, while the parties have negotiated at length in good faith,  at times contentious.    Documents concerning the Defendant's written discrimination policies, and the Plaintiff's performance and qualifications have been provided.  Disciplinary documents concerning certain identified employees have also been produced.  The parties have been able to work out most discovery disputes. However, counsel have been unable to resolve issues concerning the scope of a FRCP 30(b)(6) deposition noticed by the Plaintiff in July 2005.

The Plaintiff  now moves for an order compelling the Defendant to produce a witness pursuant to FRCP 30(b)(6) prepared to discuss the Defendant's knowledge as to FRCP 30(b)(6) topics 2, 3, 7, 8, 9, 10, and 11, and documents responsive to

---

[2]The Plaintiff further spoke openly to his co-workers about the discriminatory treatment he believed African American employees faced at the Defendant's facility and about the ways in which a Union could help to ensure that the Defendant would no longer be able to freely discriminate against African American and black employees.

2

Schedule A requests 7, 8, 9, and 10.  (See FRCP 30(b)(6) Notice of Deposition and Schedule A attached hereto as Exhibit A).

## II.   **The Relevant Facts**

As was explained above, the Plaintiff contends that he was discriminated against and retaliated against by the Defendant with respect to his discipline and termination. He claims that the Defendant falsely criticized him for poor performance and/or engaged in a practice of disparate treatment with respect to performance, because of his  race and color and/or because of his  complaints of discrimination.    The Defendant has denied this.   The Defendant claims that  the Plaintiff was treated, "at all times" in accordance with the Company's written Equal Employment Opportunity Policy.[3] (See Defendant's EEOC response attached hereto as Exhibit B at 2)

The Defendant also contends that the Plaintiff's poor performance warranted termination under a neutral policy providing for progressive discipline. (Ex. B) In claiming poor performance, the Defendant  specifically relies on: a 5/6/94 written reminder for an overweight pan; a 8/3/94 written warning for an overweight pan; purported quality issues and poor production between July 1998 and July 2000; a July 2000 demotion purportedly for quality issues; allegedly overweight pans in September 2001 and January 2002; alleged failures to complete manufacturing orders (MO's) in September and October 2001; alleged failures to use a computerized system (CONCAM) in October 2001; and a January 2002 contaminated mix. (Ex. B)   In the

---

[3]In fact, the Defendant has raised, as an affirmative defense, the claim that it, "at all material times made good faith efforts to comply with its obligations under the federal employment discrimination statutes".  (Answer Attached hereto as Exhibit C)

administrative proceedings in this case the Defendant  claimed that other employees were disciplined or terminated, "because of overweight pans of mix, contamination of mix, or failure to complete manufacturing order slips".  (Ex. B)    The Defendant produced certain limited disciplinary records showing that some employees had been disciplined between 1997-2002 for, "quality, safety or other reasons".  (Ex. B) The Defendant claimed that it could not produce all of the records showing each employee who had engaged in similar conduct and the discipline each had received, because it had a policy of destroying disciplinary documents after 12 months. (Ex. B)

The Defendant's written policies contradict this claim.  (Ex. D) The written policies provide that the Defendant will retain disciplinary records and evaluations for every employee, "without any delegations [sic] or expungement from the date of employment until three years of the termination". (Ex. D) It is undisputed that discipline from 1994 involving the Plaintiff was retained.

The Plaintiff, therefore, sought information concerning the discipline of similarly situated employees in discovery.   Among the Plaintiff's requests for production were requests for all documents showing discipline of employees for: safety issues, including heavy pans, failure to use the con-cam system, and contamination of mixes.  (Ex. E) The Defendant objected to each of these requests.[4]

---

[4]The Requests, objections, and responses included,

14.    Please provide all documents showing any discipline of employees working in Defendant's Bonded and Superabrasives division for performing unsafe acts during the period of from 1994 to present.

**RESPONSE:**
Saint-Gobain objects to this request on the grounds that it is vague, overbroad, unduly

4

burdensome, and calls for the production of documents which are neither relevant or material to this action, nor likely to lead to the discovery of admissible evidence. Without waiving these objections, Saint-Gobain refers Plaintiff to documents previously produced in connection with the Initial Disclosures of Defendant. Further responding, Saint-Gobain will produce a chart, attached as Exhibit A, of Bonded Abrasives employees disciplined in 2003 and 2004 for performing unsafe acts, provided that Plaintiff executes a mutually-satisfactory Stipulation and Agreement of Confidentiality.

24.    Please provide any and all documents showing all overweight pans during 2001, and the discipline, if any, for the creator of each such overweight pan.

**RESPONSE:**
       Saint-Gobain objects to this request the grounds that it si overbroad, unduly burdensome and constitutes an unreasonable interference with the privacy rights of individuals who are not parties to this action. Without waiving these objections, Saint-Gobain refers Plaintiff to documents previously produced in connection with the Initial Disclosures of Defendant. Further responding, Saint-Gobain will produce any responsive documents that it is able to locate after conducting a reasonable search.

28.    Please produce any and all documents showing all M.O's in 2001 and 2002, and the discipline, if any for each employee who failed to sign and M.O. during this time period.

**RESPONSE:**
       Saint-Gobain objects to this request the grounds that it is overbroad, unduly burdensome, calls for the production of documents which are neither relevant or material to this action, nor likely to lead to discovery of admissible evidence, and constitutes and unreasonable interference with the privacy rights of individuals who are not parties to this action. Without waiving these objections, Saint-Gobain refers Plaintiff to documents previously produced in connection with the Initial Disclosures of Defendant. Further responding, Saint-Gobain will produce any responsive documents that it is able to locate after conducting a reasonable search.

31.    Please produce any and all documents showing all information entered into the CONCAM system during 2001 and 2002, and the discipline, if any, for each employee who failed to enter information into the system during this time period.

**RESPONSE:**
       Saint-Gobain objects to this request the grounds that it is overbroad, unduly burdensome, and calls for the production of documents which are neither relevant or material to this action, nor likely to lead to this discovery of admissible evidence. Without waiving these objections, Saint-Gobain states that it does not believe that nay responsive documents currently exist.

5

(Ex. E)   However, the Defendant eventually agreed to produce such disciplinary records for 2001 and 2002, limited to the Bonded Abrasives department in which the Plaintiff worked.   The Plaintiff also agreed to sign a reasonable protective order. (Affidavit of Plaintiff's counsel attached as Exhibit F)

After the agreement was reached the Defendant indicated that it had no documents showing that any employees, other than the Plaintiff, had been disciplined in 2001 or 2002 for failing to use the CONCAM system or for  contaminating a mix, and virtually no documents showing safety violations, overweight mixes, or failure to sign

---

36.    Please produce any and all documents showing all contaminated mixes during 2001 and 2002, the cost to the Defendant of each, and the discipline, if any, for each employee who allegedly created a contaminated mix during this period.

**RESPONSE:**
Saint-Gobain objects to this request the grounds that it is overbroad, unduly burdensome, calls for the production of documents which are neither relevant or material to this action, nor likely to lead to the discovery of admissible evidence.
37.    If not already provided, please produce all records of employee discipline for failure to sign M.O's or enter information into the computer system during the period of 1/00 through 6/30/02.

**RESPONSE:**
Saint-Gobain refers the Plaintiff to its response to Request No. 28.

38.    If not already provided, please produce all records of employee discipline for contamination of mixes during the period of 1/00 through 6/30/02

**RESPONSE:**
Saint-Gobain refers Plaintiff to its response to Request No. 36.

39.    If not already provided, please produce all records of employee discipline for the creation of overweight mixes during the period of 1/00 through 6/30/02.

**RESPONSE:**
In addition to the documents previously produced in connection with the Initial Disclosures of Defendant, see document numbered DEF00571.

6

MO's other than those initially produced during the administrative proceedings.  (Ex. F)

The first deposition taken by the Plaintiff was that of Michael Tivnan, one of the supervisors who had disciplined  him.  Michael Tivnan  testified that he had disciplined employees for conduct similar to that of the Plaintiff.  Tivnan testified that he could not recall the details of such discipline but indicated that he believed the Defendant would have  records of such discipline.  (Ex. G at 101-108)  On the same date, the Plaintiff began the deposition of William Tivnan, another of the supervisors involved in disciplining him.  William Tivnan testified that it was his understanding that discipline was **not** destroyed after 12 months, as the Defendant's had claimed.  (Ex. H at 18-25) He testified that discipline was retained and could be used in determining later discipline.  (Ex.I)

On July 6, the Plaintiff took the deposition of Dennis Baker,  the Defendant's Vice President of Human Resources during the relevant time period.   The Plaintiff sought to depose Baker in order to determine how the Defendant's allegedly non-discriminatory policies concerning discipline and promotion were actually applied.   The Plaintiff also sought to determine the factual basis for the Defendant's affirmative defense - that it had made good faith efforts to comply with its obligations under the federal anti-discrimination statutes.[5]

---

[5] The Plaintiff initially sought discovery of all race discrimination and retaliation complaints between January 199 and January 2004 and the documents showing the investigations of such complaints.  (Ex. F)   However, the Defendant has claimed that there is no reasonable way to identify all complaints of race discrimination or retaliation because  documents involving discrimination complaints are not kept separately from complaints involving other employment issues.  (Ex. F)  The Defendant has produced formal race discrimination, racial harassment or retaliation complaints for the Bonded Abrasives Division filed in Court or with the EEOC or MCAD between January 1999 and January 2004, and has agreed to ask any supervisors, officers

During this deposition, Baker demonstrated an almost complete lack of knowledge and understanding about the Defendant's application of its allegedly non-discriminatory policies.   He did not know what  training, if any, the Defendant provided. with respect to the investigation of discrimination complaints.   (Ex I at 17)     He did not know the burden of proof that was used by the Defendant in investigating discrimination complaints or whether investigators were even  trained as to the use of a  burden of proof.  (Ex I at 36-37)  He did not know how the Defendant determined which complaints were assigned to a Human Resources official for investigation and which were assigned to a supervisor.  (Ex I at 16-17)   He testified that it was not always necessary to document an investigation of a discrimination complaint, but said that he was unable to answer questions as to the circumstances under which it would be acceptable to investigate a complaint without documenting it.   (Ex I at 22-28) He did not even  know if supervisors were informed that they had an  obligation to report complaints of discrimination.   (Ex. I at 65)

Baker  testified that he had been involved in approximately eighty complaints of race discrimination while employed by the Defendant, but could not recall the specifics of **any** of these complaints, or recall the details of the investigations he himself conducted.   (Ex. I at 192- 193)  While he was familiar with the written policies

---

or human resource personnel about any complaints that they received between January 1999 and January 2004 in the Bonded Abrasives Division where such supervisors, officers or human resource personnel believed that the employee was making a complaint of race discrimination, racial harassment or retaliation, and has agreed to produce any available internal documents related to such complaints.  (Ex. F) Such documents have not yet been produced.  In the absence of clear written records of the Defendant's response to discrimination complaints, the Plaintiff decided to take the deposition of Baker, the head of human resources, to determine the basis for the Defendant's affirmative defense.

prohibiting discrimination, he did not know what, if anything, the Defendant did between 1998- 2002 to ensure that employees received an equal opportunity to advance as required by these policies.  (Ex I at 44-46)

Baker was similarly ignorant of the Defendant's actual practices with respect to promotion and discipline.   He did not know if open positions were posted.  (Ex. I at 141)  He  did not know whether the Defendant trained supervisors on how to make promotion decisions.   (Ex. I at 49-52)  He did not know what procedures the Defendant used in selecting employees for promotion to supervisory positions, and did not know what, if anything, the Defendant did to ensure equality of opportunity with respect to such promotions.[6]   (Ex. I at 49-52)

Moreover, Baker did not know what, if anything, the Defendant did to ensure that its written policies were followed with respect to progressive discipline.  (Ex. I at 59-64) He was  unable to answer questions as to what, if anything, the Defendant did to ensure that discipline was applied impartially without regard to race.  (Ex. I at 59-64) He did not know if the Defendant kept records of discipline to ensure that it was applied fairly and without regard to race.  (Ex. I at 65)

Nor did Baker have any factual information with respect to the Defendant's practices with respect to retaliation.   When asked what the Defendant did to ensure that people who complained of discrimination were not retaliated against, Baker responded that, "we **assume** that policy is being followed".  (Ex. I at 65-66)(emphasis

---

[6]He testified that  the Defendant had · a practice of looking at a number of factors in making promotion decisions, but admitted that he did not know all of the factors that were considered, and did not know of any instances where that  practice was actually followed in the Bonded Abrasives Division between 1998-2002. (Ex. I at 133-146)

added)   He admitted that he  did not have knowledge of any individual situations.   (Ex. I at 65-66)

During the course of deposing these few fact witnesses, it became apparent to Plaintiff's counsel that it could take several dozen depositions to learn the facts known to the Defendant concerning the application of its policies and practices, the discipline of similarly situated employees,  the existence and investigation of any claims of discrimination, and the Defendant's claimed good faith attempts to comply with federal anti-discrimination law.   Moreover, since the fact witnesses frequently contradicted one another and/or the documents or claimed to have no recollection of critical events, policies or practices, the Plaintiff might after a dozen depositions still be unable to identify Defendant's version of events.   For these reasons the Plaintiff, on  July 7, 2005,  noticed the Defendant's deposition pursuant to FRCP 30(b)(6), to take place on July 19th.[7]   (Ex. A)

The FRCP 30(b)(6) deposition notice sought,  in relevant part, a witness who could discuss:

2.    The Defendants investigations and purported good faith efforts to address workplace discrimination, retaliation and/or disparate treatment, including any response to or investigations of race discrimination, racial harassment  or retaliation during the period of January 1999 through January 2004 at Defendant's Worcester facility, including any investigation of a racist comment made by Dave Aubin, any investigation of a doll hung on the Union informational board, and any other investigation into any complaints of race discrimination, racial harassment or retaliation.    This would include information as to any complaints, and information concerning who conducted the investigation, the date and substance of any communications, the standards used in investigating the complaints, and/or  any documents  created or reviewed.

---

[7] The only depositions completed prior to this notice were the depositions of Michael Tivnan and Dennis Baker. (Ex. F)

3.     The Defendants investigations and purported good faith efforts to address workplace discrimination, retaliation and/or disparate treatment, through its purportedly comprehensive, effective and well-publicized policies, including any action taken by the Defendant to ensure that these policies were actually followed with respect to promotions and with respect to discipline at the Worcester facility between January 1999 and the date of the Plaintiff's termination.

7.     The Defendant's discipline of other employees, if any, for having created a contaminated mix  at the Worcester facility between January 1, 1999 and January 1, 2004, including but not limited to any documents showing such contaminated mixes, and the discipline or lack thereof for such conduct.

8.     The Defendant's discipline of other employees, if any, for having  failed to sign an M.O.  at the Worcester facility between January 1, 1999 and January 1, 2004, including but not limited to any documents showing such failure and the discipline or lack thereof for such conduct..

9.     The Defendant's discipline of other employees, if any, for having  failed to use the CON-CAM system at the Worcester facility between January 1, 1999 and January 1, 2004, including but not limited to any documents showing such failure and the discipline or lack thereof for such conduct.

10.     The Defendant's discipline of other employees, if any, for having heavy mixes or other safety violations at the Worcester facility between January 1, 1999 and January 1, 2004, including but not limited to information as to how and when mixes were weighed, any documents showing overweight mixes  and the discipline or lack thereof for such conduct.

11.     The evaluations and disciplinary history of similarly situated employees identified in the Defendant's CHRO Answer or discovery responses: Kevin Reed, Frank Hanson, Jim Constantine, Tom Patnode, Ron Racca, Asare Agyeman, Russ Johnson, Larry Stidsen, Gary Egan, Kevin Moulton, Ray Bull, Joseph Wilson, Francis Zawalich, Stephen Gelardi, Kenneth Acquah, Michael Thibault, Nana Asamoah, Daniel Appiah, Kevin Morrissey, James Ward, Ivan Vega, Dale Pope, Gifton Edwards, Mike Kimball, Pasquale Gaimani, Tom Carlo, Walter Ahl, David Aubin, Eric Baning, Nathan Benson, Jason Bullock, James Ciceno, Jesus Cruz, William Gambacini, James Geland, Marc Haynes, George Koduah, Chanle Mome Jr., Frederico Pires, and Richard Wade.  The Plaintiff believes that such information is relevant and material to the determination of whether the Plaintiff was treated the same as other, similarly situated employees.

An attached Schedule A sought, *inter alia*,

2.     Any documents not already produced concerning the Defendants investigations and purported good faith efforts to address  workplace discrimination, retaliation and/or disparate treatment, including any response to or investigations of

11

race discrimination, racial harassment or retaliation during the period of January 1999 through January 2004 at Defendant's Worcester facility, including any investigation of a racist comment made by Dave Aubin, any investigation of a doll hung on the Union informational board, and any other investigation into any complaints of race discrimination, racial harassment or retaliation.   This would include information as to any complaints, and information concerning who conducted the investigation, the date and substance of any communications, the standards used in investigating the complaints, and/or any documents created or reviewed. The Plaintiff believes that such information is relevant and material to the motive of the Defendant and to the Defendant's affirmative defenses.

3.     Any documents not already produced concerning the Defendants investigations and purported good faith efforts to address workplace discrimination, retaliation and/or disparate treatment, through its purportedly comprehensive, effective and well-publicized policies, including any action taken by the Defendant to ensure that these policies were actually followed with respect to promotions and with respect to discipline at the Worcester facility between January 1999 and the date of the Plaintiff's termination.

7.     Any documents not already produced concerning the Defendant's discipline of other employees, if any, for having created a contaminated mix at the Worcester facility between January 1, 1999 and January 1, 2004, including but not limited to any documents showing such contaminated mixes, and the discipline or lack thereof for such conduct.

8.     Any documents not already produced concerning the Defendant's discipline of other employees, if any, for having failed to sign an M.O. at the Worcester facility between January 1, 1999 and January 1, 2004, including but not limited to any documents showing such failure and the discipline or lack thereof for such conduct.

9.     Any documents not already produced concerning the Defendant's discipline of other employees, if any, for having failed to use the CON-CAM system at the Worcester facility between January 1, 1999 and January 1, 2004, including but not limited to any documents showing such failure and the discipline or lack thereof for such conduct.

10.     Any documents not already produced concerning the Defendant's discipline of other employees, if any, for having heavy mixes or other safety violations at the Worcester facility between January 1, 1999 and January 1, 2004, including but not limited to information as to how and when mixes were weighed, any documents showing overweight mixes and the discipline or lack thereof for such conduct.

(Ex. A) [8]

On or about July 11th, the parties agreed to take fact witness, Thomas Oliver's deposition on July 19th.   (Ex. F)  The parties also agreed that to the extent that the Defendant wished to have Oliver testify as a FRCP 30(b)(6) witness, the Plaintiff would depose him on that same date to avoid having to recall the witness.   (Ex. F) Defendant's counsel agreed to identify the areas, if any, that Oliver would be testifying about as a  FRCP 30(b)(6) witness by July 15th. (Ex. F)

On July 15, 2005, Defendant's counsel sent a fax indicating that  Oliver would be responding to topics 7,8, 9, and 10, and that the Defendant would be providing the other FRCP 30(b)(6) designations and any objections by July 18th.   (Ex. K)   On July 16th, counsel had a telephone conversation to discuss any objections to the scope of

---

[8]A letter sent to the Defendant at the same time as this notice of deposition explained,

Enclosed please find the notice for the  FRCP 30(b)(6) deposition that we discussed.  Please let me know if there is another date that would be more convenient  and I will try to accommodate you.  Also, if you have specific concerns about any of the topics please let me know and we can try to resolve them.  For example, if you believe that a witness has already fully expressed the facts with respect to the topic and the Defendant would be adopting those facts as accurate, it will not be necessary to  produce a witness to parrot the deposition testimony.   Instead, to the extent an issue has been fully covered in a deposition, and the Defendant intends to adopt that version of events as its own, I would be satisfied if the Defendant stipulated that it is adopting that testimony.   In addition, I have sometimes agreed to contention interrogatories, where a party is concerned that the FRCP 30(b)(6) will result in the inadvertent disclosure of privileged information. Obviously, I am also willing to consider restating or limiting a subject matter if there are specific problems with respect to the phrasing or with the burden of producing the documents and/or witness.

Should you have any questions, please feel free to call me.
(Ex. J)

the FRCP 30(b)(6) deposition relating to Oliver so that the parties could try to resolve the objections prior to beginning the deposition on the 19th.  (Ex. F)   The only objection made by Defendant's counsel with respect to topics  7,8, 9, and 10 during that conversation was his contention that the topic should be limited to the Bonded Abrasives Division.  (Ex. F)

After the close of business on the 18th, the Defendant served objections to the scope of the FRCP 30(b)(6) deposition.[9]   (Ex. F; Ex L)  These objections are, in relevant part,

2.     The Defendants investigations and purported good faith efforts to address workplace discrimination, retaliation and/or disparate treatment, including any response to or investigations of race discrimination, racial harassment  or retaliation during the period of January 1999 through January 2004 at Defendant's Worcester facility, including any investigation of a racist comment made by Dave Aubin, any investigation of a doll hung on the Union informational board, and any other investigation into any complaints of race discrimination, racial harassment or retaliation.   This would include information as to any complaints, and information concerning who conducted the investigation, the date and substance of any communications, the standards used in investigating the complaints, and/or  any documents  created or reviewed. The Plaintiff believes that such information is relevant and material to the motive of the Defendant and to the Defendant's affirmative defenses.

**Objection:**
Defendant objects to this request on the grounds that it is overbroad, unduly burdensome and seeks information that is not material or relevant to this action, nor likely to lead to the discovery of admissible evidence.  Without waiving these objections, Defendant designates Mary Fitzgerald for the alleged racist comment made by David Aubin, and designates Richard Zeena for complaints of race discrimination, racial harassment or retaliation.  Defendant further states that Plaintiff previously had the opportunity to depose Dennis Baker on the investigation of a doll hung on the Union information board.

---

[9] Unfortunately,  Plaintiff's counsel had left the office, and did not receive the objections until after the deposition began.  (Ex. F)

14

3.    The Defendants investigations and purported good faith efforts to address workplace discrimination, retaliation and/or disparate treatment, through its purportedly comprehensive, effective and well-publicized policies, including any action taken by the Defendant to ensure that these policies were actually followed with respect to promotions and with respect to discipline at the Worcester facility between January 1999 and the date of the Plaintiff's termination.  The Plaintiff believes that such information is relevant and material to the motive of the Defendant an d to the Defendant's affirmative defenses.

**Objection:**

Defendant objects to this request on the grounds that it is overbroad, unduly burdensome and seeks information that is not material or relevant to this action, nor likely to lead to the discovery of admissible evidence.  Without waiving these objections, Defendant designates Richard Zeena on these matters.

7.    The Defendant's discipline of other employees, if any, for having created a contaminated mix  at the Worcester facility between January 1, 1999 and January 1, 2004, including but not limited to any documents showing such contaminated mixes, and the discipline or lack thereof for such conduct.   The Plaintiff believes that such information is relevant and material to the determination of whether the Plaintiff was treated the same as other, similarly situated employees.

**Objection:**

Defendant objects to this request on the grounds that it is overbroad, unduly burdensome and seeks information that is not material or relevant to this action, nor likely to lead to the discovery of admissible evidence.  Without waiving these objections, Defendant designates Thomas Oliver on these matters.

8.    The Defendant's discipline of other employees, if any, for having  failed to sign an M.O.  at the Worcester facility between January 1, 1999 and January 1, 2004, including but not limited to any documents showing such failure and the discipline or lack thereof for such conduct.   The Plaintiff believes that such information is relevant and material to the determination of whether the Plaintiff was treated the same as other, similarly situated employees.

**Objection:**

Defendant objects to this request on the grounds that it is overbroad, unduly burdensome and seeks information that is not material or relevant to this action, nor likely to lead to the discovery of admissible evidence.  Without waiving these objections, Defendant designates Thomas Oliver on these matters.  Defendant further seeks that Plaintiff had the opportunity to depose Jeffrey Clark, William Tivnan and Michael Tivnan on these matters.

9.    The Defendant's discipline of other employees, if any, for having failed to use the CON-CAM system at the Worcester facility between January 1, 1999 and January 1, 2004, including but not limited to any documents showing such failure and the discipline or lack thereof for such conduct.    The Plaintiff believes that such information is relevant and material to the determination of whether the Plaintiff was treated the same as other, similarly situated employees.

**Objection:**

Defendant objects to this request on the grounds that it is overbroad, unduly burdensome and seeks information that is not material or relevant to this action, nor likely to lead to the discovery of admissible evidence.  Without, waiving these objections, Defendant designates Thomas Oliver on these matters.

10.    The Defendant's discipline of other employees, if any, for having heavy mixes or other safety violations at the Worcester facility between January 1, 1999 and January 1, 2004, including but not limited to information as to how and when mixes were weighed, any documents showing overweight mixes  and the discipline or lack thereof for such conduct.    The Plaintiff believes that such information is relevant and material to the determination of whether the Plaintiff was treated the same as other, similarly situated employees.

**Objection:**

Defendant objects to this request on the grounds that it is overbroad, unduly burdensome and seeks information that is not material or relevant to this action, nor likely to lead to the discovery of matters.  Defendant further states that Plaintiff had the opportunity to depose Jeffrey Clark, William Tivnan and Michael Tivnan on these matters.

11.    The evaluations and disciplinary history of similarly situated employees identified in the Defendant's CHRO Answer or discovery responses: Kevin Reed, Frank Hanson, Jim Constantine, Tom Patnode, Ron Racca, Asare Agyeman, Russ Johnson, Larry Stidsen, Gary Egan, Kevin Moulton, Ray Bull, Joseph Wilson, Francis Zawalich, Stephen Gelardi, Kenneth Acquah, Michael Thibault, Nana Asamoah, Daniel Appiah, Kevin Morrissey, James Ward, Ivan Vega, Dale Pope, Gifton Edwards, Mike Kimball, Pasquale Gaimani, Tom Carlo, Walter Ahl, David Aubin, Eric Baning, Nathan Benson, Jason Bullock, James Ciceno, Jesus Cruz, William Gambacini, James Geland, Marc Haynes, George Koduah, Chanle Mome Jr., Frederico Pires, and Richard Wade.  The Plaintiff believes that such information is relevant and material to the determination of whether the Plaintiff was treated the same as other, similarly situated employees.

**Objection:**

Defendant objects to this request on the grounds that it is overbroad, unduly burdensome and seeks information that is not material or relevant to this action, nor likely to lead to the discovery of admissible evidence.   Defendant further objects to this

16

request on the grounds that is seeks information that would constitute a substantial interference with the privacy rights of individuals who are not parties to this action.

(Ex L)

On August 26, 2005, the Defendant filed objections to the Schedule A of the FRCP 30(b)(6) deposition. (Ex M)    On September 7, 2005 an Amended and Supplemental set of Objections and Responses were received.    (Ex N) The Defendant objected as follows:

7.    Any documents not already produced concerning the Defendant's discipline of other employees, if any, for having created  a contaminated mix  at the Worcester facility between January 1, 1999 and January 1, 2004, including but not limited to any documents showing such contaminated mixes, and the discipline or lack thereof for such conduct.

**Objection:**
Saint-Gobain objects to this request on the grounds that it is overbroad, unduly burdensome, and calls for the production of documents which are neither relevant or material to this action, nor likely to lead to the discovery of admissible evidence.  Saint-Gobain further objects to this request the ground that it constitutes an unreasonable interference with the privacy rights of individuals who are not parties to this action. Without waiving these objections, Saint-Gobain refers Plaintiff to its Response Nos. 36 and 38 to Plaintiff's Requests for Production and Supplemental Response No. 36.

8.    Any documents not already produced concerning the Defendant's discipline of other employees, if any, for having  failed to  sign an M.O.  at the Worcester facility between January 1, 1999 and January 1, 2004, including but not limited to any documents showing such failure and the discipline or lack thereof for such conduct.

**Objection:**
Saint-Gobain objects to this request the grounds that it is overbroad, unduly burdensome, calls for the production of documents which are neither relevant or material to this action, nor likely to lead to discovery of admissible evidence, and constitutes and unreasonable interference with the privacy rights of individuals who are not parties to this action.  Without waiving these objections, Saint-Gobain refers Plaintiff to documents previously produced in connection with the Initial Disclosures of Defendant.  Further responding, Saint-Gobain refers Plaintiff to its Response Nos. 28 and 37 to Plaintiff's Requests for Production.

9.     Any documents not already produced concerning the Defendant's discipline of other employees, if any, for having  failed to  use the CON-CAM system at the Worcester facility between January 1, 1999 and January 1, 2004, including but not limited to any documents showing such failure and the discipline or lack thereof for such conduct.

**Objection:**
      Saint-Gobain objects to this request the grounds that it is overbroad, unduly burdensome, calls for the production of documents which are neither relevant or material to this action, nor likely to lead to the discovery of admissible evidence, and constitutes an unreasonable interference with the privacy rights of individuals who are not parties to this action.  Without waiving these objections, Saint-Gobain refers Plaintiff to its Response No. 31 to Plaintiff Requests for Production.

10.    Any documents not already produced concerning the Defendant's discipline of other employees, if any, for having heavy mixes or other safety violations at the Worcester facility between January 1, 1999 and January 1, 2004, including but not limited to information as to how and when mixes were weighed, any documents showing overweight mixes  and the discipline or lack thereof for such conduct.

**Objection:**
      Saint-Gobain objects to this request the grounds that it is overbroad, unduly burdensome, calls for the production of documents which are neither relevant or material to this action, nor likely to lead to the discovery of admissible evidence, and constitutes an unreasonable interference with the privacy rights of individuals who are not parties to this action.  Without waiving these objections, Saint-Gobain refers Plaintiff to its Response Nos. 14, 24, and 39 to Plaintiff's Requests for Production.

(Ex. N)

      The Defendant also interposed several general objections, including,

      1.     Saint-Gobain objects to the Requests to the extent they demand production of documents in violation of Local Rule 26.1(C), which provides that each side is limited to two separate sets of requests for production.   The Requests represent Plaintiff's approximate eleventh set of requests for production; Plaintiff previously served Plaintiff's First Set of Requests for Production as well as individual requests for production on Rick Zeena, Dennis Baker, Jeff Clark, Bill Tivnan, Tom Oliver, Jeff Clark, Sheldon Zaklow, Steve Stockman, and Mary Fitzgerald in connection with their depositions. Accordingly, Plaintiff has already exceeded the number of sets of requests for production allowed by Local Rule 26.1(C).

      2.     Saint-Gobain objects to the Requests on the grounds that they were served beyond the permissible date under the applicable deadline set forth in the Court's Scheduling Order.  Plaintiff served the Requests on July 7, 2005, when only thirteen

days remained in the discovery period, thereby failing to provide Defendant with the mandatory 30-day period for serving its responses, as set forth in Fed. R. Civ. P. 34(b). (Ex N).

The parties have discussed the Defendant's objections to the FRCP 30(b)(6) deposition and schedule A at some length in an attempt to resolve the disputes.   (Ex. F)   The Plaintiff has offered to limit the requests to the Bonded Abrasives Division where the Plaintiff was employed, and has signed a protective order, agreeing to keep the disciplinary and personnel information of non-party witnesses confidential.   (Ex. F) While many disputes have been resolved the following areas have not.


III.    **The Law**

The general scope of discovery is defined by Federal Rule of Civil Procedure 26(b), which states in pertinent part,

> [p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any . . . documents, or other tangible things, and the identity and location of persons having knowledge of any discoverable matter.

FRCP 26.

It is well established that these  Rules must be broadly and liberally construed in favor of disclosure.  Hickman v. Taylor, 329 U.S. 495, 507  (1947); Herbert v. Lando, 441 U.S. 153, 177 (1979);SEC v. Sargent, 229 F.3d 68, 80 (1st Cir.2000).   "[T]he scope of discovery under Fed. R. Civ. P. 26(b) is very broad, 'encompass[ing] any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." ' Maresco v. Evans Chemetics, Div. of W.R. Grace & Co., 964 F.2d 106, 114 (2d Cir.1992) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978)); Multi-

Core, Inc. v. Southern Water Treatment Co., 139 F.R.D. 262, 264 n. 2 (D.Mass.1991).

Relevance, for purposes of discovery, is an extremely broad concept. A.I.A. Holdings S.A. v. Lehman Bros., No. 97 Civ. 4978, 2000 WL 763848, at *2 (S.D.N.Y. June 12, 2000). "[A]ny possibility" that the sought-after information may be relevant to the subject-matter of the action will satisfy Rule 26(b)(1)'s requirements. U.S. v. Massachusetts Indus. Finance Agency, 162 F.R.D. 410 (D.Mass.,1995); Gagne v. Reddy, 104 F.R.D. 454, 456 (D.Mass.1984). Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357, 1367 (2d Cir.1991).    See Also   Morse/Diesel, Inc. v. Fidelity & Deposit Co., 122 F.R.D. 447, 449 (S.D.NY1988) (noting that "reasonably calculated" in Rule 26(b)(1) means "any possibility that the information sought may be relevant to the subject matter of the action"). Moreover, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The underlying purpose of the "modern discovery doctrine" is to allow parties to obtain "the fullest possible knowledge of the issues and facts before trial." LeBarron v. Haverhill Cooperative School Dist., 127 F.R.D. 38, 40 (D.N.H.1989).

Once any possibility of relevance is shown, the burden shifts to the party opposing discovery to show that the discovery is improper. Dove v. Atl. Capital Corp., 963 F.2d 15, 19 (2d Cir.1992); Penthouse Int'l v. Playboy Enters., 663 F.2d 371, 391 (2d Cir.1981); Croom v. Western Connecticut State University, 2002 WL 32503668 (D.Conn.2002); Jones v. Hirschfeld, 219 F.R.D. 71, 74-75 (S.D.N.Y.2003).   Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning are not sufficient. H. Lewis Packaging, LLC v. Spectrum Plastics, Inc.,2003 WL 22305148

(D.Conn. 2003), citing <u>Cipollone v. Liggett Group, Inc.</u>, 785 F.2d 1108, 1121 (3d Cir.1986). Instead, the movant is required to show, "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." <u>In re Terra Int'l, Inc.</u>, 134 F.3d 302, 306 (5th Cir.1998) (internal quotation marks omitted).

**IV.    ARGUMENT**

**A.    The Motion to Compel  Must Be Granted as to the Scope of  the Schedule A  Requests 7, 8, 9, and 10**

In Schedule A Requests 7,8,9, and 10, as limited, the Plaintiff seeks the documents showing the discipline of other employees in the Bonded Abrasives Division between January 1999 and January 2004 for the same conduct for which the Plaintiff was disciplined.   Specifically, the Plaintiff seeks records of discipline for: (1) safety violations, including heavy pans, (2) failing to sign MO's, (3) failing to use the CONCAM system, and/or (4) creating a contaminated mix.   The Defendant has objected claiming that these requests are  overly broad and would result in the production of documents which are neither relevant or material, nor likely to lead to the discovery of admissible evidence.   The Defendant further contends that in order to comply with the schedule A, it  would have to review hundreds of personnel files, and that this would be far too burdensome.  Finally the Defendant contends that the production of these documents would constitute an unreasonable interference with the privacy rights of non-parties.[10]

---

[10]  The Defendant also objects claiming that the Plaintiff has exceeded the number of requests for production of documents permitted by Local Rule 26.1, and that the Requests were served on July 7, when discovery was set to close on July 20th , thereby violating FRCP 34(b). Neither of these claims have merit.

The Defendant contends that the Plaintiff has violated  Local Rule 26.1(C) by serving more than two separate sets of requests for production.   However, the Plaintiff has served one o

21

As an initial matter these objections are untimely.   The Notice of Deposition and Schedule A was served on or about July 7, 2005.   At the deposition on July 18th, the Defendant reserved its right to file objections to the Schedule A requests within 30 days pursuant to FRCP 34.   Thus, any objections would have had to have been filed by August 8th, 2005.   The First Set of Objections were not filed until August 26, 2005.

More importantly, each of the objections is without merit.   First, to the extent that the requests seek information about the disciplinary history of non-parties, the Plaintiff has executed a protective order agreeing to keep all such information confidential, and to seal filings containing this private information.   This should adequately protect the privacy rights of non-parties.[11]  See: Glenn v. Williams, 209 FRD 279 (DDC 2002)(noting that privacy concerns were "negligible" given existence or reasonable protective order".

Second, the treatment of other employees in the same department, who engaged in the same misconduct for which the Plaintiff was allegedly disciplined and terminated,

_____

set of requests for production of documents as to the Defendant pursuant to FRCP 34, and one Schedule A as to the Defendant pursuant to FRCP 30.   The other Schedule A requests were directed at non-party witnesses.   A rational reading of Local Rule 26.1 (C) is that Schedule A requests directed at non-party witnesses are not to be counted as production requests for these purposes.   Indeed, the Defendant in this case has served five requests for production of documents on non-party witnesses, in addition to the Requests for Production of Documents served on the Plaintiff. (Ex. F)   Thus, the Defendant clearly held this assumption.   Since this is only the second request for production of documents as to the Defendant it should be permitted pursuant to Local Rule 26.1(C).

In addition, FRCP 34(b) does not, as the Defendant suggests, require that Schedule A requests be served thirty days before the close of discovery.   More importantly, discovery had been extended through October 7, 2005 at the time that the Defendant raised this objection.   Thus, there has clearly been no prejudice to the Defendant.

[11]    Indeed, the Defendant, which negotiated the terms of this protective order, has not shown how this would be insufficient to protect the privacy rights of non-parties

is clearly relevant.    In this case, the Plaintiff has alleged that he was treated differently than other employees who engaged in similar conduct and that this difference in treatment was the result of his race or his complaints of discrimination.[12]    It is black letter law that where a case alleges  disparity of treatment on the basis of a protected characteristic, evidence of how others were treated by Defendant, "might well be relevant to a determination of whether it discriminated".  U.S. v. Massachusetts Indus. Finance Agency, 162 F.R.D. 410 (D.Mass.,1995),  citing  Harper v. Union Savings Ass'n, 429 F.Supp. 1254, 1261 (N.D.Ohio 1977) (evidence of actions taken with respect to other mortgagees, black and white, considered in suit under the Fair Housing Act alleging racial discrimination);  Jackson v. Harvard University, 111 F.R.D. 472 (D.Mass.1986) (noting that information concerning the qualifications of past candidates for tenure, the actions taken by Defendants with respect to such candidates, and the reasons therefor was discoverable).

Indeed, the Defendant essentially admitted the relevance of this information when it selectively used disciplinary documents during the administrative proceedings.    The Defendant produced certain disciplinary documents of non-party witnesses covering a more than five year period, and argued that the records were relevant in showing that the Plaintiff was not treated discriminatorily.    The Defendant having provided the records which it believes to be helpful to it, now attempts to shield the remaining disciplinary records from discovery.    This selective use of disciplinary records should

---

[12]   Witnesses have confirmed this testimony, explaining that other employees have contaminated mixes, created heavy pans and failed to sign MO's without receiving the same discipline as the Plaintiff.   (Ex. O 16-18; 20-22; 32-33; 38-39; 49; 64-70; 77-82).

not be permitted.   Plaintiff is entitled to an opportunity to show that he was evaluated by a stricter standard than white colleagues, or those who had not complained of discrimination, and the Defendant should be compelled to produce the disciplinary records.  Jackson v. Harvard University, 111 F.R.D. at 476.

Nor is the five year period adopted by the Plaintiff overly broad.   As the Court explained in Jackson, 111 F.R.D. 472, 475 (D. Mass.,1986), "a time frame which merely brackets the contested employment action would foreclose Plaintiff from elucidating past practices or identifying a pattern which might suggest that Defendants' reasons for denying Plaintiff tenure are pretextual..... Therefore, the court expands the time frame ordered by the magistrate from three years to ten".  In fact, a  five year period has been upheld in other discrimination cases as **not** being overly broad.   See: Swackhammer v. Sprint Corp., 225 FRD 658 (D. Kan 2004), and cases cited therein.

Finally, the Defendant contends that it will have to review hundreds of files in order to identify the responsive records.  This could arguably be burdensome.  However, Plaintiff's counsel has agreed to review the records personally- either on -site or in a neutral location, and has agreed to treat all information as protected under the agreed-upon signed protective order.  This removes the burden which would otherwise be placed on the Defendant.  See:   U.S. v. Massachusetts Indus. Finance Agency, 162 F.R.D. 410 (D.Mass,1995) (permitting discovery where Plaintiff's counsel indicated its willingness to send personnel to  review Defendant's files, thus reducing any burden on Defendant).

The information as to how other employees who worked in the same division were disciplined for similar performance problems is clearly calculated to lead to the

24

discovery of admissible evidence.    The Defendant relies on such records in claiming

that its progressive discipline policy was applied without regard to race or protected

activity, but has refused to produce all of the relevant records.    The time period is

reasonable in scope and the Plaintiff is willing to assume any burden.  Thus, the Motion

to Compel should be granted as to schedule A requests 7, 8, 9 and 10.

**B.**    **The Motion to Compel  Must Be Granted as to FRP 30(b)(6) Topic 2**

In Topic 2, the Plaintiff asked that the Defendant produce someone with

knowledge of, "the Defendant's investigations and purported good faith efforts to

address workplace discrimination, retaliation and/or disparate treatment, including any

response to or investigations of race discrimination, racial harassment  or retaliation

during the period of January 1999 through January 2004 at Defendant's Worcester

facility".    The Plaintiff has offered to limit the scope of the testimony to the Bonded

Abrasives Division.  The Defendant however seeks to limit the testimony to the period of

March 2000 and January 2004,[13] claiming that the topic is overly broad, unduly

burdensome and not reasonably calculated to the discovery of admissible evidence.

Again, these objections are without merit.

First, the contention that the Defendant's investigation into discrimination

complaints, and other efforts to address workplace discrimination in 1999 and early 2000

is not calculated to lead to the discovery of admissible evidence is nonsense.  The

Defendant has raised a defense that it made good faith efforts to comply with anti-

---

[13] The Defendant has also indicated that no witness will be produced to discuss a response to an allegedly racist doll, as Mr. Baker was questioned at length on this issue during his deposition.   The Plaintiff will accept this limitation.

discrimination laws.   Whether or not the actions taken by the Defendant in 1999 and 2000 were reasonably designed to prevent and/or correct discriminatory or retaliatory behavior, as the Defendant claims,  are necessarily dependant on what the Defendant learned during its investigations.  The Plaintiff simply cannot determine whether  the conclusions reached and/or responses taken were reasonable without the details of the complaints and any investigations.[14]

Nor has the Defendant shown how the request is overly broad or unduly burdensome.   The Defendant has already agreed to question its officers, supervisors, managers and human resource officials and to determine the existence and extent of such complaints, investigations and efforts.   Providing a witness who can discuss the information does not appear burdensome.  The only claim of overbreadth or burden raised by the Defendant with respect to this issue, is that the witness that the Defendant would prefer to use to address this topic  was not employed by the Defendant in the Bonded and Abrasives Division until March 2000, and that the Defendant will therefore have to educate this witness.   That some effort may be involved does not, however, make a request **unduly** burdensome.  See: Hoyt v. Connare, 202 F.R.D. 71 (DNH 1996) (ordering Defendant chief, who had been  high ranking officer  for several years, "to

---

[14]      Numerous cases have so held, explaining  that when a corporation raises this defense,  the Defendant has placed its conduct  "at issue", and the Plaintiff is entitled to engage in discovery as to the "bona fides"  of the investigations, including discovery of the underlying investigatory materials.  See: EEOC v. Staffing Network, LLC, 2002 WL 31473840, at *3 (N.D.IL 2002); McGrath v. Nassau County Health Care Corp., 204 F.R.D. 240 (E.D.N.Y.2001); Jones v. Scientific Colors Inc., 2001 WL 845650 at *1, (N.D.IL 2001); Brownell v. Roadway Package System, Inc., 185 F.R.D. 19 (N.D.N.Y.1999); Sealy v. Gruntal & Co., 1998 WL 698257 (SDNY 1998); Worthington v. Endee, 177 F.R.D. 113 (N.D.N.Y.1998); Volpe v. U.S. Airways, Inc., 184 F.R.D. 672 (M.D.Fla. 1998); Peterson v. Wallace Computer Services, Inc., 984 F.Supp. 821 (D.Vt. 1997); Harding v. Dana Transport Inc., 914 F.Supp. 1084, (D.N.J. 1996).

answer interrogatory number 9 based on his own recollection and reasonable inquiry of other senior officers and records of any instances or complaints of police misconduct in the last five years".....with respect to those instances or complaints identified, Defendant... is to make a search of police department  records for documents that directly relate to those instances or complaints. Defendant is to then identify all such events by date and description of the complaint").

Indeed, this type of education is often required in a FRCP 30(b)(6) deposition. "Upon notification of a deposition, the corporation has an obligation to investigate and identify and if necessary prepare a designee for each listed subject area and produce that designee as noticed." <u>Bank of New York v. Meridien BIAO Bank Tanzania Ltd.</u>, 171 F.R.D. 135, 151 (S.D.N.Y.1997).   The deponent must be prepared "to the extent matters are reasonably available, whether from documents, past employees, or other sources." <u>Id.</u>

The Defendant, in this case, has done nothing more than raise allegations of harm, unsubstantiated by any specific evidence.   Consequently, the Plaintiff's motion to compel should be granted as to Topic 2.

**C.    <u>The Motion to Compel  Must Be Granted as to FRP 30(b)(6) Topic 3</u>**

With respect to Topic 3, as limited, the Plaintiff seeks to have the Defendant produce a witness prepared to discuss, "the Defendants investigations and purported good faith efforts to address  workplace discrimination, retaliation and/or disparate treatment, through its purportedly comprehensive, effective and well-publicized policies, including any action taken by the Defendant to ensure that these policies were actually

followed with respect to promotions and with respect to discipline " in the Bonded Abrasives Division between January 1999 and the date of the Plaintiff's termination". The Defendant seeks to limit the request to the period between March 2000 and February 6, 2002, claiming that a request for information as to its investigations and purported good faith efforts to address workplace discrimination, retaliation and/or disparate treatment between January 1999 and March 2000 is overly broad, unduly burdensome, and seeks information that is not reasonably calculated to lead to the discovery of admissible evidence.

As was explained above, the Defendant has interposed an affirmative defense that it made good faith efforts to comply with federal law. The extent of these efforts is clearly relevant to this defense. A party is entitled to know the factual basis for each affirmative defense that has been asserted. Omega Engineering, Inc. v. Omega, S.A., 2001 WL 173765 (D.Conn. 2001); Harlem River Consumers Co-Op., Inc. v. Associated Grocers of Harlem, Inc., 64 F.R.D. 459, 461-62 (S.D.N.Y.1974) (noting that parties are entitled to know the factual content of opponent's claims with a reasonable degree of precision). Consequently, the topic is reasonably calculated to lead to the discovery of admissible evidence.

The time period sought by the Plaintiff in determining these good faith efforts is less than three years, during which time the Plaintiff was actively employed and was being subjected to the discipline that he claims was discriminatory. Thus, the time period is not overly broad.

Nor has the Defendant demonstrated any burden. The Defendant has explained that the Plaintiff had the opportunity to question certain fact witnesses prior to noticing

28

this deposition.    However, the only depositions completed before the FRCP 30(b)(6)

deposition were Michael Tivnan and Dennis Baker.    Neither had detailed personal

knowledge of the Defendant's good faith efforts during this period.[15]    Consequently,

had the Defendant wished to use either as a FRCP 30(b)(6) witness, the Defendant

would have had to prepare the witness. The Defendant cannot show that having to

educate a witness now rather than earlier will impose any additional burden.    Since the

topic is relevant, and the Defendant cannot meet its burden of proof as to overbreadth or

burden, the motion to compel should be granted as to Topic 3.

### D.    The Motion to Compel  Must Be Granted as to FRP 30(b)(6)  Topics 7, 8, 9, and 10

With respect to Topics 7, 8, 9, and 10 the Plaintiff seeks to have the Defendant

produce a witness prepared to answer questions as to its discipline of other employees

in the Bonded Abrasives department between January 1999 and January 2004 for

contaminating mixes, failing to sign an MO, failing to use the CONCAM system, and

creating heavy mixes or other safety violations.  The Defendant seeks to limit the

request to the period of July 2001-January 2003 for the Mix and Mold department, and

March 2001- January 2003 for all other departments within the Bonded Abrasives

Division.   The Defendant also seeks to limit the discovery of safety violations to safety

violations involving heavy mixes.  Defendant objects to the request on the grounds that it

is overbroad, unduly burdensome and seeks information that is not material or relevant

to this action, nor likely to lead to the discovery of admissible evidence.    The Defendant

---

[15]Indeed, it was Baker's surprising ignorance on the subject that led Plaintiff's counsel to decide that the FRCP 30(b)(6) was necessary.

29

further states that the Plaintiff had the opportunity to depose Jeffrey Clark, William Tivnan and Michael Tivnan on these matters.

The information sought involves the discipline of employees in the same division as the Plaintiff either while he was employed or shortly thereafter, for the same or similar conduct.   As was explained supra, this information is clearly calculated to lead to the discovery of admissible evidence, and the five year time period  is not overly broad.

The Defendant has not shown how answering questions as to the treatment of similarly situated employees would be unduly burdensome.   Instead, the Defendant apparently contends that it is burdensome because the Plaintiff has had the opportunity to question fact witnesses.   This is true.   However,

> [a] deposition pursuant to Rule 30(b)(6) is substantially different from a witness's deposition as an individual. A 30(b)(6) witness testifies as a representative of the entity, his answers bind the entity and he is responsible for providing all the relevant information known or reasonably available to the entity... The Rule 30(b)(6) designee does not give his personal opinions. Rather, he presents the corporation's "position" on the topic...  The corporation must provide its interpretation of documents and events..... The designee, in essence, represents the corporation just as an individual represents him or herself at a deposition.

Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc. , 2002 WL 1835439 at *2-*3, (S.D.N.Y.2002),  See Also:  Sabre v. First Dominion Capital, LLC, 2001 WL 1590544 at *1 (S.D.N.Y.2001).   Thus, the fact that fact witnesses have provided certain information is not determinative.

Moreover,  the deposition of these fact witnesses will not provide the Plaintiff with all of the information available to the Defendant.[16]   In order to learn all factual

---

[16]  During various depositions, Defendant's counsel objected and instructed the fact witnesses not to answer question if the source of the information was communications with legal

information available to the Defendant, the Plaintiff would have to take the deposition of every supervisor, both current and former,  who worked in the Division, thereby exceeding the 10 deposition limit set by the Court- and hope that these individuals had clear recollections of who they disciplined several years ago, and why.

Finally, the fact that Jeff Clark, Michael Tivnan and William Tivnan were deposed does not show that the Defendant has been subjected to an undue burden.    To the extent that the Defendant wishes to adopt the testimony of  Clark or the Tivnan's, the Plaintiff has offered to accept a stipulation.    To the extent that these witnesses were unable to recall events concerning discipline- they would have to have been educated by the Defendant in order to provide an acceptable  FRCP 30(b)(6) response.  Thus, in order to show an undue burden the Defendant would have to show that it is substantially harder to prepare witness now to discuss the details of the discipline in 1999 and 2003, and about safety violations unrelated to heavy pans, than it would have been to prepare one of the witnesses who has already been deposed.

The Defendant has failed to articulate any specific evidence justifying a claim of burden or of overbreadth  and the information sought is clearly relevant.  For these

---

counsel. (Ex.F)    Thus, the Plaintiff is unable- without deposing a dozen or more fact witnesses- to learn all of the facts known to the Defendant. (Ex. F)    However, in a FRCP 30(b)(6) deposition, the Defendant is required to divulge all  facts known to the Defendant, including the facts known to counsel.  See: In Re Vitamins Antitrust Litigation, 216 F.R.D. 168, 172-172 (D.D.C. 2003)(noting that Defendant was "obligated to produce one or more 30(b)(6) witnesses who were thoroughly educated about the noticed deposition topics with respect to any and all facts known to Bioproducts or its counsel, regardless of whether such facts are memorialized in work product protected documents or reside in the minds of counsel"); Paul Revere Life Ins. Co. v. Jafari, 206 F.R.D. 126, 127 (D. MD 2002) (requiring production of 30(b)(6) witness to testify regarding facts obtained by counsel during discovery). See Also: Calzaturficio, 201 F.R.D. 33, 38-39 (D.Mass. 2001)(finding that documents  within the  party's control are "reasonably available" ).

reasons, the Plaintiff requests that the Court order the Defendant to produce a witness prepared to answer questions related to FRCP 30(b)(6) topics, 7, 8, 9, and 10 as limited to the Bonded Abrasives Division.

###   D.    The Motion to Compel  Must Be Granted as to FRP 30(b)(6) Topic 11

In topic 11, the Plaintiff has requested that the Defendant produce a witness prepared to discuss the  evaluations and disciplinary history of certain identified similarly situated employees.   The Defendant has articulated the now  familiar refrain that the request is overbroad, unduly burdensome and seeks information that is not material or relevant to this action, nor likely to lead to the discovery of admissible evidence.   The Defendant further objects to this request on the grounds that it seeks information that would constitute a substantial interference with the privacy rights of individuals who are not parties to this action.

However, in larger part these are the individuals that the Defendant has identified as being relevant, similarly situated employees.   To claim that their disciplinary history and evaluations are not relevant is therefore ridiculous.   As was explained above, the Plaintiff has signed a protective order.   Thus, the privacy rights of these employees have been protected.   The Defendant has also failed to produce any specific evidence as to why the request is too broad or unduly burdensome.[17]   Thus, the motion to compel must be granted as to Topic 11.

---

[17] While the Defendant has agreed to produce the evaluation and disciplinary history for these employees, they have not yet all been provided.   In the interests of reducing any unnecessary burden, the Plaintiff's counsel  is willing to consider limiting the documents and/or persons about whom she will ask questions once she has received all of the documents

## V.    **CONCLUSION**

For all of the foregoing reasons, the Plaintiff, Robert Briddell, respectfully

requests that the Court grant the Plaintiff's Motion to Compel.

THE PLAINTIFF,

BY:

Mary E. Kelly ct07419
Livingston, Adler, Pulda,
Meiklejohn & Kelly, P.C.
557 Prospect Avenue
Hartford, Connecticut 06105
(860) 233-9821

/s/Darragh K. Kasakoff
Darragh K. Kasakoff BBO# 260400
Seder & Chandler
339 Main Street
Worcester, MA 01608
(508) 757-7721

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Plaintiff's Motion to Compel was electronically filed and mailed, first class mail, on this 19[h] day of September 2005 to all counsel of record:

Amanda S. Rosenfeld
Jackson Lewis LLP
75 Park Plaza
Boston, Massachusetts 02116

_____
Mary E. Kelly

34