UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ROBERT BRIDDELL,

    Plaintiff

v.

SAINT GOBAIN ABRASIVES, INC.,

    Defendant.

Civil Action No.: 04-40146

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

Defendant, Saint Gobain Abrasives, Inc. ("Defendant" or the "Company"), submits this memorandum in opposition to Plaintiff's Motion To Compel. The Declarations of David J. Kerman and Richard Zeena are also filed in support of Defendant's memorandum. The grounds for Defendant's opposition are set forth below.

**BACKGROUND**

This is Plaintiff's third forum in which he challenges his discipline and discharge by the Defendant. Saint-Gobain Abrasives, Inc. is among the largest employers in Worcester, Massachusetts, and the Company and its predecessor, Norton Company, have done business in Worcester for 119 years. Plaintiff had intermittent performance problems throughout his employment with the Defendant.[1] These issues prompted both formal and informal counseling, as well as more serious corrective measures, including a demotion in the year 2000. Plaintiff's performance problems continued in the following year, escalating in terms of frequency in the latter half of 2001. By that time, Plaintiff's repeated disregard for Defendant's attempts to

---

[1] These performance problems are set forth in the April 13, 2004 Position Statement that Defendant filed with the EEOC, a copy of which was previously submitted by Plaintiff as Exhibit B to his Motion to Compel.

1

informally counsel him (evidenced by repeated non-written warnings) necessitated more formal measures, i.e., a series of written warnings which culminated in a disciplinary suspension. When Plaintiff's performance problems persisted, he was discharged in February 2002.

## EARLIER LEGAL PROCEEDINGS

Plaintiff was a vocal supporter of the United Auto Workers Union (the "Union") which won a representation election at the Company in September, 2001. In his initial challenges to his discipline and discharge, Plaintiff alleged that the discipline he received in 2001, and his discharge in February, 2002 constituted unlawful discrimination based upon his Union activities, in violation of the National Labor Relations Act. Accordingly, through his Union, Plaintiff filed unfair labor practice ("ULP") charges with the National Labor Relations Board (NLRB) in connection with his discipline and termination. Following extensive investigations by the NLRB Regional Office, the ULP regarding Plaintiff's discipline was voluntarily withdrawn, and the ULP regarding Plaintiff's discharge was dismissed by the NLRB. Plaintiff subsequently appealed that dismissal to the NLRB's General Counsel. That appeal was denied.

Having failed in his bid to prove that his discipline and termination by Defendant constituted discrimination based on his Union activities, Plaintiff is now claiming that he was subject to discriminatory discipline and discharge because of his race and because he complained about race discrimination. In the spring of 2004, Plaintiff's claim of race discrimination and retaliation was investigated by the United States Equal Employment Opportunity Commission (the "EEOC"). In a Determination rendered in May 2004, the EEOC dismissed Plaintiff's charge of race discrimination and retaliation.

In dismissing plaintiff's administrative charge, the EEOC found that based upon Plaintiff's performance problems, he had failed to make the required evidentiary showing that he

was performing his "job in a satisfactory manner." (A copy of the EEOC's Determination is attached as Exhibit A to the Kerman Declaration ("Kerman Dec. <u>Ex.</u> A")). In rejecting Plaintiff's argument that he received more harsh treatment than white employees of the Defendant, the EEOC made the following observations:

> "When comparing your discipline to other similarly situated employees, it should be noted that the issue of whether or not you were treated more harshly than other White employees was looked at. The following White employees were disciplined for the same performance issues as you: Kevin Reed, Frank Hanson, Jim Constantine, Tom Patnode, Ron Racca, Russ Johnson. Furthermore, the following White employees were terminated for disciplinary reasons: Larry Stidsen, Gary Egan, Kevin Moulton, Joseph Wilson, Francis Zawlich, Stephen Gelardi, and Michael Thibault. In addition, other employees, unlike you have been terminated <u>without receiving</u> progressive discipline."

Plaintiff then filed this civil action in August 2004, alleging race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981 <u>et. seq</u>. Contrary to Plaintiff's original allegations of discrimination based upon his union activities, and his current allegations of discrimination based upon his race, Plaintiff's termination from employment was based upon legitimate business and operational reasons. Moreover, in this action, Plaintiff himself has undermined his allegations of race discrimination. Specifically, when Plaintiff was asked at his deposition whether he believed that he was disciplined and discharged because of his race, Plaintiff testified under oath that he believed that he was subject to these adverse actions "because of [his] union activities." (Plaintiff Dep. 332; Kerman Dec. <u>Ex.</u> D)[2].

---

[2] It should also be noted that Defendant has deposed three of the key non-supervisory employees whom Plaintiff identified as witnesses that would support his claim of race discrimination. Significantly, these three co-workers testified that they never saw any evidence that Plaintiff was subjected to race discrimination; moreover, these witnesses testified that Plaintiff never complained about race discrimination during his employment with the Company.

3

## **DISCOVERY TO DATE**

In this litigation, Plaintiff has pursued an aggressive campaign of depositions. In fact, Plaintiff has taken the depositions of nine Company managerial employees, generating in excess of 1400 pages of recorded testimony. (Kerman Dec. ¶6) Specifically, Plaintiff has deposed the following Company officials: (1) **Michael Tivnan**, who exercised supervisory responsibility over Plaintiff for approximately ten years; (2) **William Tivnan**, who was involved in supervising and disciplining Plaintiff during the last year of Plaintiff's employment; (3) **Jeffrey Clark**, a supervisor who was involved in disciplining Plaintiff during the last year of Plaintiff's employment; (4) **Thomas Oliver**, the manager to whom Michael Tivnan, William Tivnan and Jeffrey Clark all reported, and the manager who exercised principal responsibility for making the recommendations regarding Plaintiff's discipline and termination from employment; (5) **Sheldon Zacklow**, the plant manager to whom Thomas Oliver reported, and who approved the recommendation to terminate Plaintiff's employment; (6) **Steven Stockman**, the Vice President to whom Sheldon Zacklow reported, and who approved the recommendation to terminate Plaintiff's employment; and (7) **Richard Zeena**, the Human Resources Manager who worked closely with Plaintiff's supervisors and managers in connection with all key decisions regarding Plaintiff's discipline, up to and including Plaintiff's discharge from employment.

In addition, Plaintiff has deposed **Mary Fitzgerald**, another Human Resources Manager who investigated two incidents of alleged racial bias in the workplace, and **Dennis Baker**, a senior Company executive to whom Plaintiff allegedly reported an incident of alleged discrimination.[3]

---

[3] While Plaintiff's Motion to Compel refers to Mr. Baker as testifying that he was involved in *eighty* complaints of race discrimination, this was a transcription error that has since been corrected by Mr. Baker. See Kerman Dec. ¶4; Ex. C. While Plaintiff in the motion to compel repeatedly expresses surprise about Mr. Baker's lack of knowledge regarding certain personnel

Plaintiff has also engaged in extensive written discovery. For instance, Plaintiff served on Defendant 51 document requests and 16 written interrogatories. (See Kerman Dec. Ex. A). While the parties had some disputes regarding the scope of Plaintiff's extensive document requests and interrogatories, the parties engaged in good faith negotiations and were able to resolve all issues regarding this written discovery without seeking the intervention of the Court.

Accordingly, the sole remaining dispute in this case is the scope of Plaintiff's Rule 30(b)(6) deposition notice and the corresponding schedule of documents requested pursuant to that deposition notice. In that regard, Defendant has designated three individuals to respond to various aspects of the 30(b)(6) deposition notice. In addition, Defendant has produced voluminous documents in response to Plaintiff's 30(b)(6) schedule of requested documents. Specifically, Plaintiff requested and Defendant has produced the performance evaluations and disciplinary records of nearly 30 employees who have been disciplined for reasons that were similar to the reasons for which Plaintiff was disciplined, or who were discharged for various performance and conduct infractions. In addition, Plaintiff has requested and Defendant has either produced or agreed to produce the performance evaluations and disciplinary records of another 12 employees who held the same or similar position as Plaintiff at the time of his discharge. (Kerman Dec. ¶5) In sum, Defendant has produced over 1700 pages of documents from the personnel files of 40 different employees. (Id.). Significantly, Defendant has produced or is in the process of producing the performance evaluations and disciplinary records of **every single** employee that Plaintiff has specifically identified in Schedule A to his 30(b)(6) deposition notice.

---

policies and practices, Mr. Baker held a high level executive position at the Company, and therefore it is not surprising that he delegated responsibility for many human resource functions and activities to other individuals.

As set forth more fully below, Defendant objects to Plaintiff's motion to compel further discovery with respect to his 30(b)(6) notice and accompanying Schedule A. The record demonstrates the great length to which Defendant has gone to provide relevant comparative data and information within a relevant time period. Indeed, Plaintiff's counsel concedes that the parties have been able to "work out most discovery disputes." The gravamen of his current dispute is Plaintiff's unreasonable desire to take further depositions and obtain documents pursuant to Fed. R. Civ. P. 30(b)(6) on subjects that are overbroad, unduly burdensome and not limited to a relevant time period.

## ARGUMENT

A. **The Scope Of The 30(b)(6) Notice And Accompanying Schedule A Is Overly Broad, Unduly Burdensome And Not Designed To Elicit Relevant Information Or Evidence That Will Be Admissible At Trial.**

Because of Defendant's good faith efforts to comply with its discovery obligations, Plaintiff's motion to compel focuses only on a limited portion of his 30(b)(6) notice. At issue are topics 2, 3, 7-10 and 11, as well as Schedule A requests to produce 7-10.

1. **The Scope Of Topic 2 Is Overly Broad And Unduly Burdensome To The Extent That It Encompasses The Time Period From January, 1999 To March, 2000.**

Topic No. 2 of Plaintiff's 30(b)(6) deposition notice seeks designation of a Company witness knowledgeable about investigations and purported good faith efforts to address workplace discrimination, retaliation and/or disparate treatment during the period of January, 1999 through January, 2004 at Defendant's Worcester facility, including any racist comment made by Dave Aubin, and any other investigation into any complaints of race discrimination racial harassment or retaliation.

In response to this request, Defendant has agreed to produce a witness, Human Resources Manager Richard Zeena, to testify about Topic 2 during the time period from when he

6

commenced his employment with Defendant in March, 2000 through January, 2004. Thus, the only remaining issue in dispute is the scope and relevance of this topic for the 14 month period running from January, 1999 through February, 2000.

Compelling a witness to testify about topic 2 for the January, 1999 through February, 2000 period is unwarranted because that period is not relevant to the issues in this case. Richard Zeena did not commence his employment as the Human Resources Manager for the Bonded Abrasives division in Worcester until March, 2000. (Zeena Dec. ¶1) Nonetheless, since that date Mr. Zeena has been the HR representative responsible for addressing all issues of discrimination within the Bonded Abrasives group, including those issues raised by Plaintiff in his complaint. In fact, it is undisputed that the alleged discriminatory disciplinary treatment of Plaintiff in this case occurred <u>after</u> March, 2000. Moreover, during discovery, Plaintiff identified only two (2) alleged instances of race discrimination in the January 1999 through February, 2000 period – an alleged racist comment by Dave Aubin directed toward a Hispanic employee in September, 1999 and another incident in May, 1999 in which Plaintiff complained that he had seen an employee wearing a confederate flag bandana in the workplace. Specifically, Defendant produced Mary Fitzgerald, a Human Resources Manager, as its 30(b)(6) witness to testify on both of these matters on Friday, September 30, 2005. (Kerman Dec., ¶7)

Plaintiff's motion to compel additional 30(b)(6) testimony during the period January, 1999 through March, 2000 should be denied because Plaintiff has not alleged that any discriminatory incidents (other than the Aubin discipline and the bandana incident) took place during this limited time period. Thus, requiring Defendant to designate a manager or human resources official to cover the 14-month period prior to March 2000 is particularly unreasonable

7

given the burden placed on Defendant and the unlikelihood of Plaintiff discovering **any** additional relevant information.

>  2. Topic 3 Of The Rule 30(b)(6) Notice Is Similarly Overbroad, Unduly Burdensome And Not Designed To Elicit Relevant Information Or Evidence That Will Be Admissible At Trial.

Topic 3 of Plaintiff's 30(b)(6) notice asks Defendant to designate a witness prepared to testify on:

> Defendant's investigations and purported good faith efforts to address workplace discrimination, retaliation and/or disparate treatment, through its purportedly comprehensive, effective and well-publicized policies, including any action taken by the Defendant to ensure that these policies were actually followed with respect to promotions and with respect to discipline at the Worcester facility between January 1999 and the date of Plaintiff's termination [February 6, 2002].

In response to this request, Defendant agreed to produce Richard Zeena of Defendant's Human Resources department to testify about topic 3 during the period March, 2000 to February 6, 2002 - the date of Plaintiff's termination. Therefore, as with topic 2, the only remaining area of dispute as to topic 3 is the 14-month period of January 1999 through February 2000.

Plaintiff's motion to compel designation of a witness to testify about topic 3 during the January 1999 through February 2000 time period should be denied. Topic 3 seeks testimony about Defendant's efforts to address discrimination and retaliation, as well as adherence to Defendant's policies *with respect to promotion and with respect to discipline*. It is undisputed, however, that Plaintiff did not apply for any promotional opportunities during the 14-month period of January 1999 through February 2000, and it is also undisputed that Plaintiff was not subject to any disciplinary action during this 14-month period. Thus, requiring Defendant to go back at this point to identify a person with knowledge of promotions and discipline and

adherence to company policies during a time period when Plaintiff never applied for a promotion and was not disciplined is particularly unreasonable, given the burden placed on Defendant and the unlikelihood of Plaintiff discovering any additional relevant information.[4]

### 3. Plaintiff's Motion To Compel Should Be Denied As To Topics 7-10 And Document Requests 7-10 of Schedule A

Topics 7-10 of Plaintiff's Rule 30(b)(6) notice focus on the time period of January, 1999 through January 1, 2004. For those topics, Plaintiff seeks the designation of witnesses to testify about employees disciplined for: creating contaminated mixes (topic 7); failing to sign MOs (topic 8); failing to use the CON-CAM system (topic 9); and creating heavy pans "or other safety violations" (topic 10). Schedule A to the 30(b)(6) notice contains corresponding document requests relating to employees disciplined for: creating contaminated mixes (request 7); failing to sign MOs (request 8); failing to use the CON-CAM system (request 9); and creating heavy pans "or other safety violations" (request 10). Defendant objected to each of those topics and requests on the grounds that they are overbroad, unduly burdensome, call for production of documents that are neither relevant or material to this action or likely to lead to the discovery of admissible evidence.[5]

---

[4] Indeed, the 14 month period prior to March 2000 is no more relevant to Plaintiff's case than is the time period following his termination - a period of time excluded by Plaintiff in Topic 3 of his 30(b)(6) notice.

[5] Defendant has also made two broad-based general objections to the Document Requests set forth in Schedule A to Plaintiff's Rule 30(b)(6) Notice. See pp. 1-2 of Exhibit N to Plaintiff's Motion to Compel. First, Defendant maintains that Plaintiff's Schedule A is objectionable because Local Rule 26.1(c) provides that each side is limited to two separate sets of requests for production, and that Plaintiff has exceeded this limit by previously serving deposition notices with accompanying document requests on numerous managerial agents of the Defendant. While Plaintiff argues that these requests were served on *non-parties,* such an argument is specious in light of the fact that the individuals deposed were all employees of the Defendant. In addition, Defendant has objected to the Schedule A requests on the grounds that, when Plaintiff served the Requests on July 7, 2005, only 13 days remained in the discovery order deadline established by the Court's Scheduling Order, and therefore, Plaintiff failed to serve the requests in sufficient

Plaintiff's motion to compel as to topics and requests 7-10 should be denied for a variety of reasons. First, Defendant has designated Tom Oliver, who was the Manager of Plaintiff's department from July, 2000 to Plaintiff's February 6, 2002 termination date, to testify about Topics 7-10 during that time period. As to the time period prior to July, 2000, Plaintiff fails to make a sufficient showing of relevance for his proposed inquiry, nor can he do so. The fact is that Plaintiff's discipline and discharge all occurred during the time period that Mr. Oliver managed the department. Thus, the critical inquiry is what other disciplinary actions Mr. Oliver did or did not recommend for department employees who created contaminated mixes (topic 7); failed to sign MOs (topic 8); failed to use the CON-CAM system (topic 9); and created heavy pans (topic 10).

Moreover, to the extent Plaintiff claims that he should be entitled to make inquiries into topics 7-10 for the period January, 1999 to July, 2000, Plaintiff's request should be denied for the additional reason that Plaintiff has *already taken* the depositions of certain individuals (Jeffrey Clark, William Tivnan and Mike Tivnan) who could have been designated and prepared to testify as 30(b)(6) witnesses as to certain discipline that was imposed during that time period. However, Plaintiff chose to depose those supervisors *prior* to sending out his 30(b)(6) notice. In essence, Defendant should not be forced to produce those supervisors a second time because of

---

time for Defendant to exercise its 30-day period for responding under Rule 34(b). Plaintiff argues that this deficiency was somehow cured because the discovery period was subsequently extended by the Court at the July 22, 2005 Status Conference.

Defendant responds by stating that to the extent Plaintiff argues that his service of the Schedule A document requests should be deemed timely because of the Court's subsequent extension of the discovery period, Plaintiff should be precluded from arguing that Defendant's service of its written objections to the Schedule A requests were somehow untimely or waived, because they were not served within 30 days of July 7, 2005. In any event, it appears that both parties are prepared to have the Court address the merits of Plaintiff's 30(b)(6) Schedule A requests.

Plaintiff's inefficient practice of electing to take their depositions before sending out his 30(b)(6) notice.

The Court should similarly deny Plaintiff's motion to compel production of documents requested in requests 7-10 of Schedule A. In those requests, Plaintiff seeks documents relating to discipline covering the five year period from January, 1999 to January, 2004. As an initial matter, it should be noted that Plaintiff's original document requests served on Defendant primarily sought documents relating to these topics during the more limited periods relevant to Plaintiff's discipline, e.g., 2001 and 2002. (Kerman Dec. Ex. B) Plaintiff's now expanded request seeking documents that may have been generated outside of this relevant time period is both overbroad and burdensome. Indeed, as set forth below, requiring the Defendant to search for documents relating to all "safety violations" committed by employees during the requested time period would be highly burdensome and have little or no probative value.

### 4. Request No. 10 Is Clearly Overbroad And Unduly Burdensome

Plaintiff's motion to compel production of documents as to "safety violations of any kind" should be denied because it is particularly overbroad and unduly burdensome. There is no dispute in this case that Plaintiff was disciplined for making heavy mixes on various occasions. The 45-pound weight limit for mixes was designed to prevent injuries to other employees who had to lift the mix pans. Plaintiff previously requested and received documents regarding discipline issued to the other employees for making overweight pans during the period of January, 2000 through June, 2002. Plaintiff's current request for documents relating to "safety violations of any kind" is patently overbroad and goes well beyond the scope of what is relevant in this case. Indeed, "safety" violations can encompass a limitless number of offenses, such as wearing improper footwear, failure to wear long sleeve shirts, not wearing safety glasses,

smoking in the work area, driving a forklift too fast, etc. None of those safety violations have anything to do with the heavy pan violations for which Plaintiff was disciplined.

Plaintiff's motion to compel does not offer any explanation as to why production of documents relating to "safety violations of any kind" should be compelled. Indeed, Plaintiff himself argues at page 24 of his brief that information as to how other employees "who worked in the same division were disciplined **for similar problems** is calculated to lead to the discovery of admissible evidence." In light of that statement, Plaintiff cannot credibly contend that records pertaining to dissimilar safety violations that have nothing to do with heavy pans is relevant to his claim of discriminatory treatment.

Nor is Plaintiff's motion saved by his offer to have his own attorney review Defendant's records instead of Defendant's personnel. As an initial matter, Plaintiff concedes at page 24 of his motion that Plaintiff's request for files encompassed by requests 7-10 "could arguably be burdensome." Indeed, the Declaration of Human Resources Manager Richard Zeena establishes that a review of the requested personnel files to identify all discipline imposed for any kind of safety violation would be an enormously time-consuming task. (Zeena Dec. ¶5). In fact it would take approximately 22-25 eight-hour days to manually review the many hundreds of personnel files necessary to obtain the requested information (Id. at ¶5)

Plaintiff's "proposal" to alleviate that burden by offering to have his counsel review the records does nothing more than place Plaintiff's counsel in a position to engage in a blatant fishing expedition. Defendant could not possibly be expected to give Plaintiff's counsel unfettered access to hundreds of its personnel files containing a plethora of information completely unrelated to the issues in this case. Plaintiff's proposed "solution" to the burdensomeness problem plaguing his request does not provide any mechanism to protect the

information Plaintiff might see that may be wholly irrelevant to this litigation, but which would compromise the privacy of Defendant's employees, and which could be stored mentally by Plaintiff's counsel for potential use by counsel in other matters, including any pending NLRB matters. The fact is that before turning any files over to Plaintiff's counsel for review, Defendant would have to manually review those files itself to cull out all information unrelated to discipline and safety violations. Therefore, Plaintiff's offer to have his counsel review the personnel files does not alleviate the burden to Defendant.

Plaintiff's reference to U.S. v. Massachusetts Indus. Finance Agency, 162 F.R.D. 410 (D. Mass. 1995) does not compel a different result. There, while acknowledging without comment plaintiff's offer to have its personnel review certain documents of defendant, the Court made the additional finding that the documents in question were relevant. Id. at 413. As set forth above, however, Plaintiff cannot establish the relevance of documentation relating to other (non-heavy pan) safety violations because any Company employees who may have received such discipline fall outside of an appropriately defined set of comparators. See Jackson v. Harvard University, 111 F.R.D. 472, 474 (D. Mass. 1986) (Plaintiff faculty member who alleged sex discrimination in connection with denial of tenure was denied discovery of information concerning non-faculty employees and students, and discovery of information relating to other schools associated with the university: "The magistrate's denial of discovery of information concerning non-faculty employees and students at Harvard Business School is affirmed. . . . Furthermore, the promotion or non-promotion of nonfaculty Harvard Business School employees is simply not relevant to the issue of whether sex discrimination was the basis for the rejection of plaintiff's tenure application.") Because inquiry into discipline for "safety violations of any kind" that are unrelated to heavy pans is plainly not relevant to the propriety of Plaintiff's discipline for mixing

heavy pans, Plaintiff's motion to compel as to topic 10 and Schedule A request 10 should be denied.

### 5. Plaintiff's Motion To Compel Testimony On Topic 11 Should Be Denied.

The final area of dispute identified in Plaintiff's motion to compel relates to topic no. 11. There, Plaintiff seeks designation of a witness prepared to testify about "evaluations and disciplinary history of [40] similarly situated employees identified in Defendant's [EEOC] Answer or discovery responses . . . " Defendant objected to that request on the grounds that it is overly broad, unduly burdensome, not designed to elicit relevant information or evidence that will be admissible at trial.

As an initial matter, Plaintiff's motion should be denied because Defendant has produced voluminous documentation relating to the performance evaluations and disciplinary history for the 40 employees in question. That effort has already resulted in the production of over 1700 pages of materials from the requested personnel files and several hundred additional pages will be produced shortly. (Kerman Dec. ¶5) The contents of these written documents identify the substance of Defendant's assessment of these employees' performance and also will identify the disciplinary action imposed. Thus, these documents speak for themselves. It would be beyond burdensome for Defendant to have to additionally identify company witnesses who could testify about each and every performance evaluation and notice of discipline for 40 employees who have worked during widely divergent time periods and who have been evaluated and disciplined by numerous different supervisors.[6] Nonetheless, to the extent the records of discipline and

---

[6] Plaintiff no doubt concedes the burdensomeness of the request by recognizing at footnote 17 of the motion to compel that, "[i]n the interest of reducing any unnecessary burden, Plaintiff's counsel is willing to consider limiting the documents and/or persons about whom she will ask questions until she has received all of the documents."

14

evaluations were issued by managers and Human Resources representatives of Defendant who have been identified as witnesses in this case, Plaintiff will have the opportunity to cross examine such managers and Human Resources representatives at trial. To the extent, however, that the documents were prepared by Company officials who will not be witnesses in this proceeding because they were not involved in Plaintiff's discipline or termination, Plaintiff cannot demonstrate a need for their deposition testimony because such persons are not relevant decision makers in this case.

## CONCLUSION

For all of the foregoing reasons, Defendant respectfully requests that the Court deny Plaintiff's motion to compel in its entirety.

                Respectfully submitted,

                SAINT-GOBAIN ABRASIVES, INC.,

                By its attorneys,

                /s/David J. Kerman
                David J. Kerman, BBO #269370
                Amanda S. Rosenfeld, BBO #654101
                Jackson Lewis LLP
                75 Park Plaza
                Boston, MA 02116
                (617) 367-0025

Dated: October 7, 2005