## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

ROBERT BRIDDELL,

     Plaintiff

v.

SAINT GOBAIN ABRASIVES, INC.,

     Defendant.

Civil Action No.: 04-40146

## <u>DECLARATION OF DAVID J. KERMAN</u>

David J. Kerman, being on oath, hereby deposes and states as follows:

1.     I am counsel for the Defendant in the above matter.

2.     Attached hereto as <u>Exhibit A</u> is a true and correct copy of the determination issued by the U.S. Equal Employment Opportunity Commission on the charge of race discrimination and retaliation filed by the Plaintiff Robert Briddell.

3.     Attached hereto as <u>Exhibit B</u> is a copy of the Plaintiff's First Set of Interrogatories and Requests for Production of Documents.

4.     I was present when the Plaintiff took the deposition of Dennis Baker. While Plaintiff's motion to compel refers to a line in Mr. Baker's deposition transcript in which there is a reference to his involvement in eighty complaints of race discrimination, that number reflects a transcription error. Upon reviewing his deposition transcript in accordance with Rule 30, Mr. Baker corrected this transcription error. A copy of Mr. Baker's signed correction page is attached as <u>Exhibit C</u>. I can also confirm based on my presence at Mr. Baker's deposition that Mr. Baker never testified that he was involved in eighty complaints of race discrimination.

5.     In connection with Plaintiff's request for the performance evaluations and disciplinary records of the 40 employees listed to Request No. 11 of Schedule A to Plaintiff's

Rule 30(b)(6) Notice, Defendant has agreed to produce all of the requested personnel records. As a result, Defendant has produced to date over 1,700 pages of personnel records in response to these requests, and it anticipates producing several hundred additional responsive documents in the next week.

6.      To date, Plaintiff has deposed nine current or former managerial employees of the Company.  The deposition testimony of these individuals consumes more than 1,400 pages of transcript.  In addition, the parties have agreed that two of the nine witnesses examined by Plaintiff will be produced for further examination.

7.      The Company has designed Richard Zeena and Thomas Oliver to address the majority of topics set forth in Plaintiff's Rule 30(b)(6) deposition notice.  In addition, on September 30, 2005, Mary Fitzgerald provided testimony as the Company's designated representative of the issue of the 1999 investigation and discipline imposed on David Aubin for an alleged racial remark, and the 1999 investigation of a complaint made by Plaintiff regarding a confederate flag bandana worn by another employee.

8.      Attached hereto as Exhibit D is a true and correct copy of an excerpt from Volume 2 of Plaintiff's deposition testimony.


Executed under the penalty of perjury on this 7th day of October, 2005.


                            /s/ David J. Kerman
                    David J. Kerman

**EXHIBIT A**

JAN 07 '00 04:04 FR                                                    TO 16002327818199     P.03/05



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Boston Area Office

John F. Kennedy Federal Building
Government Center
Fourth Floor, Room 475

Anthony Linsk
Federal Investigator
(617) 565-2297
(800) 669-4000
alinsk@eeoc.gov

MAY 8 – 2004

Boston, MA 02203
(617) 565-3200
TTY (617) 565-3204
FAX (617) 565-3196

Mr. Robert Bridell
4 Martston Way
Worcester, MA 01609

Charge Number: 16C-2003-00467
Bridell v. St. Gobain Abrsaives

Dear Mr. Bridell:

The EEOC has concluded its inquiry into your allegations of discrimination. Under the Equal Employment Opportunity Commission's (EEOC) charge prioritization procedures, we focus our resources only on those charges that are most likely to result in findings of violations of the statutes we enforce. In accordance with these procedures, the EEOC has evaluated this charge based on the evidence that you and the Respondent provided. The evidence fails to indicate that a violation of the law occurred and it is not likely that additional investigation will result in our finding of a violation.
You alleged you were discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended. You alleged when the Respondent acquired Norton Company a few African American employees in Supervisory positions left the company. You also alleged that upon belief 40 employees with responsibility to supervise production and maintenance employees in the Bonded and Superabraisives Divisions were White. Furthermore, you alleged that these individuals were responsible for directing a production and maintenance work force which contains about 100 persons of color, including about 50 Black employees. In your charge of discrimination, you claim you pointed this out to management (Vice-President for Bonded Abrasives, North America and Richard Zeena, Human Resources Manager) sometime in 2000.

You also alleged in 2000 or 2001, a meeting was held by the Worcester Commission Against Discrimination in which you spoke about the lack of promotional opportunities for minorities at Saint Gobain Abrasives. Furthermore, in your charge you stated in the Summer of 2001 you became involved in a union organizing drive in support of the United Automobile Workers. You stated one of the things you did was to explain to other Black workers about the connection between the Union Movement and the Civil Rights Movement and that unionizing was a way to ensure that everyone would be treated fairly. During this campaigning which ended with a vote in support of the union in August 2002 (according to your charge) you alleged you spoke with Mr. Stockman and Mr. Zeena about how minorities were treated unfairly and denied opportunities for promotion. Soon after the campaign ended you alleged that you began to get warnings for making mistakes and were terminated in February of 2002 (which you believe to be pretextual). You believe you were held to a higher standard than other employees for complaining about the discrimination in addition to your participating in the union organizing activities.

It should first be noted that you already filed a case with the National Labor Relations Board (NLRB) alleging discharge do to your union activity. This is important to note as the Commission does not have jurisdiction over this issue. Unfortunately, the NLRB dismissed your case with lack of probable cause. With respect to your issues regarding race and retaliation, the Commission does have jurisdiction over these issues and looked at all of the evidence.

It is important to note that a Charging Party has an obligation to meet certain "criteria" when filing a charge of discrimination with respect to race. First, the Charging Party was in a protected group (Black); Second, the Charging Party was qualified for the job at issue and was performing his job at a satisfactory level; Third, the Charging Party was discharged or otherwise disciplined. Lastly, the Charging Party was replaced by someone outside the protected class (however this is not always a required element). When looking first element, you clearly meet the first criteria. You also meet the third criteria. The last criteria is not relevant in this particular case. However, with respect to the second element, the evidence does not support you were performing your job in a satisfactory manner.

The evidence assembled by the Commission indicated that you had began your employment in 1985 as a Material Handler. By 2000, you had held the title of Band 4 job of truing operator for about one year. The Band 4 job is the Respondent highest band within your department. On July 30, 2000 you were demoted to a Band 3 Mixer and received a reduction in pay of $0.75, from $17.25 per hour to $16.50 per hour. The evidence indicated that you declined additional training that was offered to you by the Respondent and thereby essentially opted by default to stay in the truing operator position. This was confirmed by a July 15, 2000 email from Chris Chanis to John Lesnansky, William Deeds and Richard Zeena. In the email you were asked in May 2000 if you wanted futher training which you declined. As a Band 3 Mixer, you had intermittent bouts of quality problems during your tenure. These issues prompted formal and informal counseling, as well as more serious corrective measures.

The evidence of record indicated you did not adhere to more serious warnings as your performance started to "snowball" in 2001. On October 4, 2001, you received a written warning which included the strong admonition that any further incidents would "be sufficient cause for immediate termination." Despite this serious warning, less than four days later, you were again warned of ignoring Respondent's procedures. However, the Respondent did not terminate you as it could have as per the last "write-up." The Respondent gave you another opportunity and were given an additional intermediate disciplinary step-another warning accompanied by a three day suspension. Even after this, your performance continued to decline with two more incidents, the more serious being the contamination of product on January 30, 2002. When comparing your discipline to other similarly situated employees, it should be noted that the issue of whether or not you were treated more harshly than other White employees was looked at. The following White employees were disciplined for the same performance issues as you: Kevin Reed, Frank Hanson, Jim Constantine, Tom Patnode, Ron Racca Russ Johnson. Furthermore, the following White employees were terminated for disciplinary reasons: Larry Stidsen, Gary Egan, Kevin Moulton, Joseph Wilson, Francis Zawlich, Stephen Gelardi, and Michael Thibault. In addition, other employees, unlike you have been terminated without receiving progressive discipline.

Give the Respondent's answer to the charge, even though you disagree with it, it is unlikely that the EEOC would find a violation if it invested additional resources. Thus, the investigation has concluded. Your Determination/Notice of Right to Sue in enclosed. The Determination is final. If you wish to pursue this charge, you may file in Federal District Court within ninety (90) days of receipt of the enclosed Notice of Right to Sue. Otherwise, your right to sue will be lost.

Sincerely,

Anthony Linsk
Federal Investigator

# EXHIBIT B

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

ROBERT BRIDDELL

    Plaintiff

v.

SAINT GOBAIN ABRASIVES, INC.

    Defendants

:
:
:
:
:
:
:
:
:
:

CIVIL ACTION NO.
4:04 CV 40146 (FDS)

December 14, 2004

## PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION

The plaintiff, Robert Briddell, hereby requests that the defendant Saint Gobain Abrasives Inc. (hereinafter "the defendant"), answer the following interrogatories and request for production fully, in writing, and under oath within thirty (30) days of the date of service hereof.

In answering these interrogatories and production requests please furnish all information available to you, including information in the possession of your attorneys, their investigators, or any person acting on your behalf, and not merely such information as is known of your own personal knowledge. If you cannot answer any part of these interrogatories in full after exercising due diligence to secure the information requested, so state and answer the remainder as fully as possible, stating whatever information or knowledge you have concerning the unanswered or partially answered portion.

These Interrogatories and Production Requests are considered to be continuing; you are requested to provide, by way of supplementary answers, such additional information as you or any person acting on your behalf may obtain which will augment

or modify your initial answers.  Such supplementary responses are to be served upon

the plaintiff within thirty (30) days of the receipt of such information.

In accordance with Local Rule 39(c), as used herein, the following terms shall

have the meanings indicated below:

A.    *Communication.*  The term "communication" means the transmittal of

information (in the form of facts, ideas, inquiries or otherwise).

B.    *Document.*  The term "document" is defined to be synonymous in meaning

and equal in scope to the usage of the term in Federal Rule of Civil

Procedure 34(a).  A draft or non-identical copy is a separate document

within the meaning of this term.

C.    *Identify (With Respect to Persons).*  When referring to a person, to

"identify" means to provide, to the extent know, the person's full name,

present or last known address, and when referring to a natural person,

additionally, the present or last known place of employment.  Once a

person has been identified in accordance with this subparagraph, only the

name of that person need be listed in response to subsequent discovery

requesting the identification of that person.

D.    *Identify (With Respect to Documents).*  When referring to documents, to

"identify" means to provide, to the extent know, information about the (i)

type of document; (ii) its general subject matter; (iii) the date of the

document; and (iv) author(s), addressee(s) and recipient(s).

E.    *Parties.*  The terms "plaintiff" and "defendant" as well as a party's full or

2

abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates.  This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

F.    *Person.*  The term "person" is defined as any natural person or any business, legal or governmental entity or association.

G.    *Concerning.*  The term "concerning" means relating to, referring to, describing, evidencing or constituting.

Also, the following rules of construction apply to all discovery requests:

(1)    *All/Each.*  The terms "all" and "each" shall both be construed as all and each.

(2)    *And/Or.*  The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

(3)    *Number.*  The use of the singular form of any word includes the plural and vice versa.

Furthermore, as used herein the following term shall have the meaning indicated below:

A.    *Complaint.*  Refers to the Federal Court complaint denoted as Civil Action No. 300CV2164 (AHN).

B.    *Defendant.*  Refers to the Curtis Packaging Corporation, including its

3

agents, employees, or representatives.

For all other terms, please use the accepted dictionary or general usage definition of the term.

In responding to these Interrogatories and Production Requests, please comply with the following instructions:

A.    If any document requested to be produced was but is no longer in the defendant's possession or control, or is no longer in existence, state:

(1)    whether it is: (a) missing or lost, (b) destroyed, (c) transferred voluntarily or involuntarily to others and, if so, to whom, or (d) otherwise disposed of; and

(2)    with respect to each such document and disposition, (a) explain the circumstances surrounding an authorization for such disposition and the approximate date thereof, and (b) state any information available to you which might be helpful in locating originals or copies of the document in question.

B.    If you assert any privilege with respect to any document, with respect to each such document: (1) identify it, (2) state the basis for the claim of privilege, (3) describe fully the circumstances of the document's origin, and (4) describe fully the circumstances of the document's disposition, including identifying all persons whom you believe have or may have seen it or become acquainted with its contents.

4

## INTERROGATORIES

1.    Please identify each person who provided information to answer these interrogatories, and please specify by number those answers to which each such person supplied information.

**RESPONSE:**

2.    Please describe any complaints of unequal treatment, discrimination, or retaliation made by or retaliation made by any employee between 1/1/00 and the present, including but not limited to the date of the complaint, the person complained to, and any actions taken.  Please identify any notes or other documents which relate to the complaint or any investigation of the complaint.

**RESPONSE:**

3.    Please describe any communications between the defendant and any employee or non-employee witness prior to the defendants receipt of the CHRO complaint in this case, about the plaintiff's performance or about any of the allegations

made in this litigation. For each such communication, please state the date of the communications, the persons included the reason for said communication if known, a detailed description of the communication, and any action taken. Please identify any documents, including any notes or witness statements, which relate to the communication.

**RESPONSE:**

4.    Please state each and every performance problem that the plaintiff allegedly had. Include the date that the defendant learned of each problem, and any communication concerning each problem. Please identify any documents which relate to your answer.

**RESPONSE:**

5.    Please set out each and every fact supporting each and every affirmative defense to the complaint, including identifying all person with relevant information. the information believed to be known to each, and the name, last known addresses and

telephone numbers and job title.  Please identify any documents which relate to this answer.

**RESPONSE:**

6.  Please describe the decision to terminate the plaintiff, including identifying each person involved in the decision, each and every basis for the decision and please describe all communications concerning the decision.  Please identify any and all documents which relate to this answer.

**RESPONSE:**

7.     Please identify all individuals who have performed any of the duties formerly performed by the plaintiff in the position he held at the time of his termination including his or her name, title, last known address and telephone number, rate of pay prior employment expenses and qualifications for the position.  Please identify any documents which relate to the answer.

**RESPONSE:**

8.     Please explain why documents concerning discipline imposed on Mr. Briddell more than 12 months before his termination were retained by the Defendant for longer than 12 months after such discipline was imposed.

**RESPONSE:**

9.     Please identify each and every employee in the Bonded and Superabrasives division for whom the Defendant retained documents concerning discipline for longer than 12 months, and please identify each such document.

**RESPONSE:**

10.    Please describe any and all communications by the Plaintiff with or in front of Stephen Stockman, Vice President for Bonded Abrasives, North America, and Richard Zeena, Human Resources Manager about how minorities were treated at Saint Gobain, including but not limited to describing the substance of the communication, the date, all persons present, and please identify any documents which relate to this answer.

**RESPONSE:**

11.    Please describe any and all communications by the Plaintiff with or in front of any management employees about his belief that minorities would receive better treatment in a unionized facility, including but not limited to describing the substance of the communication, the date, all persons present, and please identify any documents which relate to this answer.

**RESPONSE:**

9

12.    Please describe any and all communications by the Plaintiff with or in front of any management employees about the Company's practice of segregation, including but not limited to describing the substance of the communication, the date, all persons present, and please identify any documents which relate to this answer.

**RESPONSE:**

13.    Identify any/all communications that the defendant had with the plaintiff concerning problems with or concerns about his work performance, including but not limited to, the date of such communication, the person(s) involved in the communication, a description of the substance of the communication, and identify all documents which were relied on in answering this interrogatory and/or that relate to this answer.

**RESPONSE:**

14.    Identify any/all complaints about the plaintiff's performance or conduct from the time the plaintiff was hired through to his termination, including the performance or conduct at issue, the name of any person who made a complaint, their

address, job title and position, and the details of any such complaint, and identify all documents which were relied on in answering this interrogatory and/or that relate to this answer.

**RESPONSE:**

15.     Please describe any communications between the defendant and any employee from 1/1/99 to 1/1/03 concerning complaints of unequal treatment, unfair or wrongful treatment, race discrimination, retaliation, and/or wrongful discharge.   Include the date and substance of the communication, the individuals involved, and any action taken by the defendant.  Please identify any documents which relate to the communications.

**RESPONSE:**

16.     Please describe any compliments or positive feed back about the plaintiff's conduct or work performance communicated to the defendant by any supervisor, or managerial official, identifying the person who communicated the compliment or positive reaction, the person who received the communication, the date of any such communication, and  please describe in detail any and all such

11

communications.   Please  identify any and all documents which relate to this answer, including but not limited to any interview notes  and any meeting minutes.

**RESPONSE:**

## REQUESTS FOR PRODUCTION

1.      Please produce all documents identified in response to the Plaintiff's Interrogatory Responses.

**RESPONSE:**


2.      Please provide documents showing the number of employees since the date of the plaintiff's termination.

**RESPONSE:**


3.      Please provide documents including a summary plan description, and plan documents indicating the benefits provided to employees from the date of the plaintiffs hire to the present, including but not limited to documents showing the vacation sick leave, pension, 401K, and insurance benefits that the plaintiff would have received absent his termination.

**RESPONSE:**


4.      Please provide any and all documents which the defendant contends support its answer and/or any affirmative defenses.

**RESPONSE:**


13

5.    Please provide the defendant's, records, showing the average increases in the Bonded and Superabrasives Division, including but not limited to  payroll records from the date of the Plaintiff's hire to the present.

**RESPONSE:**

6.    Please provide the plaintiff's complete personnel file.

**RESPONSE:**

7.    Please provide any and all documents concerning any complaints and/or investigations of complaints concerning discrimination or retaliation made by the plaintiff.

**RESPONSE:**

8.    Please provide any and all documents concerning any complaints  and/or investigations of complaints concerning discrimination or retaliation made by any employee since January 1, 1999.

**RESPONSE:**

9.    Please provide documents showing the salary increases and/or bonuses provided to employees since the plaintiff's last day of active employment.

**RESPONSE:**

14

10. Please provide any and all documents reflecting or referring to any employee policies or practices concerning discrimination and/or retaliation, including any discrimination policies, retaliation policies, or policies for conducting internal investigations for complaints of discrimination or retaliation.

**RESPONSE:**


11. Please provide any job descriptions for all positions held by the plaintiff for the defendant.

**RESPONSE:**


12. If not already produced, please produce any and all corporate organizational charts from 2000 to the present.

**RESPONSE:**


13. Please provide documents of defendants assets and liabilities and the net worth of the company from the date of plaintiffs termination through the present.

**RESPONSE:**


14. Please provide all documents showing any discipline of employees working in Defendant's Bonded and Superabrasives division for performing unsafe acts

during the period of from 1994 to present.

**RESPONSE:**

15.   Please provide documents  showing number of persons in the Defendant's Bonded and Superabrasives Division from the date that the Defendant purchased the company through the present.

**RESPONSE:.**

16.    Please provide documents showing the race of the persons in the Defendant's Bonded and Superabrasives Division from the date that the Defendant purchased the company through the present.

**RESPONSE:.**

17.    Please provide documents  showing number of supervisors in  the Defendant's Bonded and Superabrasives Division from the date that the Defendant purchased the company through the present.

**RESPONSE:.**

18.    Please provide documents showing the race of the supervisors in the Defendant's Bonded and Superabrasives Division from the date that the Defendant purchased the company through the present.

**RESPONSE:.**

16

19.    Please provide documents showing each and every duty of a mixer during the time that the Plaintiff held that position.

**RESPONSE:.**


20.    Please provide documents showing each and every duty of a truing operator during the time that the Plaintiff held that position.

**RESPONSE:.**


21.    Please produce any and all documents showing the  number and race of employees in supervisory positions since the Defendant purchased the company.

**RESPONSE:**


22.    Please produce any and all documents showing the maximum weight for pans for mixers in 2001.

**RESPONSE:**


23.    Please produce any and all documents showing  that Briddell had overweight pans in 2001.

**RESPONSE:**

24.    Please produce any and all documents showing all overweight pans during 2001, and the discipline, if any, for the creator of each such overweight pan.

**RESPONSE:**


25.    Please provide any and all documents concerning the Defendant's policies and practices with respect to the weight of pans during 2001 and 2002, including but not limited to any internal memoranda, and/or any communications with employees about the Defendant's policies and practices.

**RESPONSE:**


26.    Please provide any and all documents concerning the Defendant's policies and practices with respect to the signing of M.O.'s during 2001 and 2002, including but not limited to any internal memoranda, and/or any communications with employees about the Defendant's policies and practices.

**RESPONSE:**


27.    Please produce any and all documents showing that Briddell failed to sign M.O's, including but not limited to copies of the M.O.'s that he allegedly failed to sign.

**RESPONSE:**

28.    Please produce any and all documents showing all M.O.'s in 2001 and 2002, and the discipline, if any, for each employee who failed to sign an M.O. during this time period.

**RESPONSE:**


29.    Please provide any and all documents concerning the Defendant's policies and practices with respect to the entering of information into the CONCAM system during 2001 and 2002, including but not limited to any internal memoranda, and/or any communications with employees about the Defendant's policies and practices.

**RESPONSE:**


30.    Please produce any and all documents showing  that Briddell failed to enter information into the defendant's CONCAM system, including but not limited to documents showing the information that he allegedly failed to enter.

**RESPONSE:**


31.    Please produce any and all documents showing all information entered into the CONCAM system during 2001  and 2002, and the discipline, if any, for each employee who failed to enter information into the system during this time period.

**RESPONSE:**


19

32.     Please produce any and all documents showing any investigation that took place after the plaintiff complained on or about 10/04/01 that he believed his discipline to be discriminatory.

**RESPONSE:**

33.     Please produce any and all documents showing any investigation that took place after the plaintiff complained on or about 1/02 that he believed his discipline to be discriminatory.

**RESPONSE:**

34.     Please provide any and all documents concerning the Defendant's policies and practices with respect to contaminated mixes during 2001 and 2002, including but not limited to any internal memoranda, and/or any communications with employees about the Defendant's policies and practices.

**RESPONSE:**

35.     Please produce any and all documents showing that Briddell contaminated mixes, including but not limited to documents showing the cost to the defendant of the contamination.

**RESPONSE:**

36.    Please produce any and all documents showing all contaminated mixes during 2001 and 2002, the cost to the defendant of each, and the discipline, if any, for each employee who allegedly created a contaminated mix during this period.

**RESPONSE:**


37.    If not already provided, please produce all records of employee discipline for failure to sign M.O.s or enter information into the computer system during the period of 1/00 through 6/30/02.

**RESPONSE:**


38.    If not already provided, please produce all records of employee discipline for contamination of mixes during the period of 1/00 through 6/30/02.

**RESPONSE:**


39.    If not already provided, please produce all records of employee discipline for the creation of overweight mixes during the period of 1/00 through 6/30/02.

**RESPONSE:**


40.    Please produce documents relating to any and all complaints of discrimination, retaliation or unfair treatment with respect to supervisor Jeff Clark.

**RESPONSE:**

41.    Please provide the complete personnel files of  Jim Constantine, Tom

Patnode, Ron Racca,  Asare Agyeman, Kevin Reed,  Frank Hanson,  Russell Johnson,

Larry Stidsen, Gary Egan, Kevin Moulton, Ray Bull, Joseph Wilson, Francis Zawalich,

Steven Gelardi, Kenneth Acquah, Michael Thibault, Nana Asamoah, Daniel Appiah,

Kevin Morrissey, James Ward, Ivan Vega, Dale Pope and Roland Bergeron.

**RESPONSE:**


42.   Please produce any and al documents concerning any MO audits done

during the period of 1/00 through 1/03.

**RESPONSE:**


43.    If not already provided, produce any/all complaints brought against the

defendant, either internally or externally by current or former employees, claiming

discrimination or retaliation from 1/1/99 through 1/1/03..

**RESPONSE:**


44.    If not already provided, produce any/all documents which constitute

and/or describe the defendant's personnel management or human resources' policies,

practices and/or procedures, which were in effect from 1/1/94 through 1/1/03, including

but not limited to, any policies and practices concerning: evaluating employee

performance; determining job duties and assignments; the process and criteria for

wage increases; the discipline of an employee; policies concerning promotion and on

22

the job training, and termination policies. If these policies and practices vary by division, include all documents reflecting any variations.

**RESPONSE:**


45.    If not already provided, produce any/all documents concerning notes and/or minutes being taken by any employees during meetings held regarding the discipline or termination of the Plaintiff.

**RESPONSE:**


46.    If not already provided, produce any/all employee organizational charts which identify or define defendant's organizational structure including, but not limited to, manager positions and the individuals who occupied those positions, as well as divisions and/or departments, from 2000 through to 1/1/03.

**RESPONSE:**


47.    If not already provided, produce the summary plan descriptions for all employee benefit plans offered by the defendant to its employees, including but not limited to, retirement plans, savings plans, profit sharing bonus and/or any other bonus programs, and/or insurance plans, from the date of the plaintiff's termination and up to and including the date of trial.

**RESPONSE:**

48.    Please produce any and all documents relating to any training of employees or managers conducted by or on behalf of the defendant with respect to discrimination, between January 1999 and January 2003.

**RESPONSE:**

49.    If not already provided, produce any/all documents that support, or contradict the Complaint, Answer or Affirmative Defenses.

**RESPONSE:**

50.    Please produce any and all workforce profiles submitted to the EEOC or any other government agency with respect to race for the period 1/99 through the present, as all documents describing, explaining, or pertaining to the methods and techniques used in compiling, editing, modifying, or updating such reports.

**RESPONSE:**

51.    Please produce any and all data, including but not limited to machine readable databases, or computer generated or stored information, and all documents necessary to interpret machine readable or computer stored information, containing the following information for each of defendant's employees from January 1999 through January 2003, including historical information for each employee such that, for each year of their employment, information is produced about each data element identified

24

below:

    a.     each employee's race;

    b.     each employee's position;

    c.     each employee's date of hire;

    d.     whether or not each employee has ever notified defendant of

discrimination or retaliation; and

    e.     any statement given related to the claims or defenses in the lawsuit;

**RESPONSE:**


THE PLAINTIFF,

By: _____

Mary E. Kelly (ct07419)
Thomas W. Meiklejohn (ct08755)
Livingston, Adler, Pulda,
Meiklejohn & Kelly, P.C.
557 Prospect Avenue
Hartford, CT 06105-2922
(860) 233-9821

## CERTIFICATE OF SERVICE

This hereby certifies that the foregoing Plaintiff's First Set of Interrogatories and Requests for Production was mailed, certified mail, on this 14th day of December, 2004 to all counsel of record as follows:

David Kerman, Esq.
Jackson Lewis, LLP
75 Park Plaza
Boston, MA 02116

Mary E. Kelly

**EXHIBIT C**

09/26/05  MON 12:45 FAX 617 367 2155        JACKSON LEWIS BOSTON                              ☒002

## DENNIS BAKER
## July 6, 2005

Page 198

```
 1              UNITED STATES DISTRICT COURT

 2                DISTRICT OF MASSACHUSETTS

 3

 4

 5     *********************************

 6     ROBERT BRIDDELL                    *

 7     v.                                 *

 8     SAINT GOBAIN ABRASIVES             *

 9     *********************************

10

11

12        I, DENNIS BAKER, do hereby certify, under

13    the pains and penalties of perjury, that the

14    foregoing testimony is true and accurate, to the

15    best of my knowledge and belief.

16        WITNESS MY HAND, this 26th day of September

17    2005.

18

19                    Dennis J Baker

20                    Dennis Baker

21

22

23

24    jmd      * As corrected on the attached sheet
```

## CATUOGNO COURT REPORTING SERVICES
### Springfield, MA   Worcester, MA   Boston, MA   Lawrence, MA   Providence, RI

**DENNIS BAKER**
**July 6, 2005**

## <u>CORRECTION SHEET</u>

DEPONENT:      DENNIS BAKER

CASE:             ROBERT BRIDDELL VS SAINT-GOBAIN

DATE TAKEN:   7/6/05

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*'

PAGE   /   LINE   /   CHANGE OR CORRECTION AND REASON

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*'

<u>153</u>   /   <u>17</u>   /   <u>Change "80" to "I don't recall any"  Reason:  Transcription error</u>

<u>185</u>   /   <u>1</u>   /   <u>Change "community" to "union"  Reason:  Transcription error</u>

_____   /   _____   /   _____

_____   /   _____   /   _____

_____   /   _____   /   _____

_____   /   _____   /   _____

_____   /   _____   /   _____

_____   /   _____   /   _____

_____   /   _____   /   _____

_____   /   _____   /   _____

_____   /   _____   /   _____

_____   /   _____   /   _____

_____   /   _____   /   _____

_____   /   _____   /   _____

_____   /   _____   /   _____

_____   /   _____   /   _____

_____   /   _____   /   _____

**EXHIBIT D**

Page 267

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

NO:  04-40146-FDS


*******************************

ROBERT M. BRIDDELL,                    *

    Plaintiff,                         *

v.                                     *

SAINT-GOBAIN ABRASIVES, INC.,          *

    Defendant.                         *

*******************************



DEPOSITION OF:

ROBERT M. BRIDDELL (VOLUME II)

CATUOGNO COURT REPORTING SERVICES

446 Main Street

Worcester, Massachusetts

June 3, 2005        9:15 a.m.




Sonya Lopes

Certified Shorthand Reporter

Page 332

1 he was doing at the time.
2     Q.     Now, Mr. Briddell, is it your
3 belief that you were disciplined and discharged
4 by the company because they were discriminating
5 against you because you were black?
6     A.     I think it was because of my union
7 activities.
8     Q.     Do you have any belief that any
9 managers at the company retaliated against you
10 because you were complaining about how the
11 company treated black employees?
12     A.     Would you say that again?
13     Q.     Yes. Do you believe any managers
14 at the company retaliated against you because you
15 complained about the treatment of black
16 employees?
17     A.     I think it -- I think it was my
18 union activities plus my -- I don't mean my way
19 -- yeah. My way of thinking. Yeah.
20     Q.     What do you mean your way of
21 thinking?
22     A.     That I was outspoken about a lot of
23 things that were going on.
24     Q.     And that outspokenness included a

Page 333

1 lot of outspokenness about the union; correct?
2     A.     About the union, yes, and about --
3 yes. Some of the things that were going on as
4 far as the black employees, so forth.
5     Q.     And you've told me either today or
6 the first day of the deposition the various
7 statements you made about, you know, the
8 treatment of black employees; correct?
9     A.     Yeah.
10     Q.     Are there any other statements you
11 made to management about the treatment of black
12 employees that you haven't told me about either
13 today or the first day of deposition?
14     A.     Not -- no. Not to my knowledge.
15     Q.     Do you have any facts or evidence
16 that would indicate that you were retaliated
17 against because you spoke out -- spoke up about
18 blacks as opposed to speaking up about the union?
19     MR. MEIKLEJOHN: Objection to the
20 form. Go ahead. You can answer it.
21     Q.     (By Mr. Kerman) You can answer it.
22     A.     Repeat that.
23     Q.     Well, you're alleging you were
24 retaliated against for the various things you

Page 334

1 said; correct?
2     A.     Yes.
3     Q.     Do you have any reason to believe
4 that the retaliation was based on you speaking
5 out about blacks as opposed to you speaking out
6 about the union?
7     MR. MEIKLEJOHN: Objection to the
8 form.
9     Q.     (By Mr. Kerman) You can answer.
10     MR. MEIKLEJOHN: But you can
11 answer. Go ahead.
12     THE WITNESS: Yeah. I definitely
13 think that when I jumped up and asked
14 Dennis Baker and Smith what reason they had
15 for discriminating against the blacks and
16 how long it took us as blacks to get rid of
17 segregation in this country in 100 some
18 damn years -- excuse my language -- they
19 come back, pull this stunt. They set
20 segregation back.
21     Another thing they did in the
22 company over a period of years, they set it
23 back by doing the things they doing.
24     Q.     (By Mr. Kerman) Who set it back?

Page 335

1     A.     Dennis Baker, Smith, all the
2 management.
3     Q.     Who are you speaking of Smith?
4     A.     He was the director of human
5 resource when this meeting took place. He was
6 the director of human resource. Dennis Baker was
7 vice president of -- or president of the whole 9
8 yards.
9     MR. MEIKLEJOHN: I'll withdraw the
10 objection.
11     MR. KERMAN: What?
12     MR. MEIKLEJOHN: I said I'll
13 withdraw the objection.
14     Q.     (By Mr. Kerman) But in terms of
15 what you think the company -- how -- in terms of
16 how you think the company was discriminating
17 against black employees, you've told me either
18 today or yesterday --
19     A.     I didn't tell you anything
20 yesterday.
21     Q.     I'm sorry. You told me either
22 today or the first day of deposition all the
23 examples that you know of where the company was
24 discriminating against black employees; correct?

18 (Pages 332 to 335)