# EXHIBIT N

**THOMAS OLIVER, 30(b)6**
**January 30, 2006**



Page 1

1              UNITED STATES DISTRICT COURT

2                DISTRICT OF MASSACHUSETTS

3

4                    C.A. No. 04-CV-40146-FDS

5

6    ***********************************

7    ROBERT BRIDDELL,                    *

8                    Plaintiff          *

9    vs.                                 *

10   SAINT GOBAIN ABRASIVES, INC.        *

11                   Defendant           *

12   ***********************************

13

14       30(b)6 DEPOSITION OF:  THOMAS OLIVER

15       CATUOGNO COURT REPORTING SERVICES

16              446 Main Street

17            Worcester, Massachusetts

18          January 30, 2006  9:35 a.m.

19

20

21

22                   GAYLE OHMAN

23          CERTIFIED SHORTHAND REPORTER

24                   #1353S94

**CATUOGNO COURT REPORTING SERVICES**
Springfield, MA   Worcester, MA   Boston, MA   Lawrence, MA   Providence, RI

THOMAS OLIVER, 30(b)6
January 30, 2006

Page 43

1           (Break taken from 11:00 to 11:40 a.m.)

2

3           MS. KELLY:  Back on the record.

4           MR. KERMAN:  I just want to make

5      the same representation that I made

6      before, Mary.  To the best of my knowledge

7      the witness has previously been provided

8      all responsive failure to sign MO

9      documents, and previously reviewed them

10     before as well as his reviewing them in

11     connection with the present question.

12     There is some possibility through

13     inadvertence -- 4000 pages -- that he

14     hasn't reviewed every single one, but it

15     is our best information that he has

16     previously as well as today the documents

17     that are responsive to failure to sign

18     MO's.

19           MS. KELLY:  And he's been -- after

20     taking the time that this is the company's

21     best current knowledge?

22           MR. KERMAN:  Absolutely, yes.

23      Q.    (By Ms. Kelly)  All right.  We have

24  52, Exhibit 52 in which failure to sign MO's

**THOMAS OLIVER, 30(b)6**
**January 30, 2006**

Page 44

1    identified Mr. Reed, Mr. Hanson, Mr.

2    Constantine, Mr. Patnode, Mr. Racca, Mr.

3    Agyeman, A-G-Y-E-M-A-N, and Mr. Johnson?

4        A.      Yes.

5        Q.      And Exhibit 73 you created an

6    e-mail at the time shortly after Mr. Briddell's

7    termination in which you identified in addition

8    Mr. Dano, Mr. Novia, Mr. Aboagye, A-B-O-A-G-Y-E,

9    Mr. Ahl, A-H-L, Mr. Gonyea, G-O-N-Y-E-A, Mr.

10   Haynes, Mr. Rodriguez, Mr. Tyre, T-Y-R-E, and

11   Mr. Wiredu, W-I-R-E-D-U.

12              Is there anyone else to the

13   defendant's knowledge who was disciplined during

14   the period of January, '99 through January 1,

15   2004 for failing to sign an MO in the bonded

16   abrasive division?

17       A.      Yes, there was.

18       Q.      Who was that?

19       Q.      John Mercak, M-E-R-C-A-K.

20       Q.      Okay.

21       A.      Do you want the numbers?

22       Q.      No these documents are the same

23   documents for the record that are in Exhibit 82

24   so you can just tell me who they are.

Page 45

1      A.      Bishop Wright, Jamie Gelardi,

2   Richard Wade, W-A-D-E, Joe Kaminski.

3      Q.      **For Joe Kaminski is that a series**

4   **of documents that are referred to as Joe K?**

5      A.      That's correct.  Cong Huynh.  It's

6   C-O-N-G, H-U-Y-N-H.

7      Q.      **If you look at exhibit -- well, I**

8   **have Exhibit 82 that you have in front of you?**

9              MR. KERMAN:  This book actually.

10      I'm sorry, that's right.

11      Q.      **(By Ms. Kelly)  Mr. McMenemy and**

12   **Mr. Monks were both disciplined for failure to**

13   **follow lockout/tagout policy.  What is that?**

14      A.      Lockout/tagout is a mechanic and/or

15   -- well, in a different situation an operator is

16   doing something to the machinery they would need

17   to isolate the power source so that equipment

18   could move while they were working on it.  This

19   basically locks it, it isolates the machine.

20      Q.      **In addition to the people**

21   **identified in 52, 73, and Exhibit 82 are there**

22   **other individuals who the defendant is aware**

23   **that were disciplined for failing to sign MO's**

24   **during the period January 1, '99 through January**

THOMAS OLIVER, 30(b)6
January 30, 2006

Page 46

1    1, 2004 in the bonded abrasives division?

2         A.    Yes.

3         Q.    Who was that?

4         A.    Ken Tyre, T-Y-R-E.

5         Q.    Okay.  I believe for the record he

6    was identified in the other ones, in your

7    e-mail.

8              MR. KERMAN:  He was, yes.

9              MS. KELLY:  That's okay.

10             THE WITNESS:  The same was already

11        identified.  Dennis Novia.

12             MS. KELLY:  He was identified.

13             MR. KERMAN:  Yup.

14             THE WITNESS:  Gelardi?

15             MR. KERMAN:  Yes, he's been

16        identified.

17             THE WITNESS:  A couple more.  Mark

18        Haynes we have him.  George Koduah, Nate

19        Benson.

20        Q.    (By Ms. Kelly)  What's -- I'm

21   sorry, the Nate Benson, just for the record what

22   is the bate stamp on that?

23        A.    2952.

24        Q.    Thank you.

CATUOGNO COURT REPORTING SERVICES
Springfield, MA   Worcester, MA   Boston, MA   Lawrence, MA   Providence, RI

THOMAS OLIVER, 30(b)6
January 30, 2006

Page 47

1        A.      And one last one Bob Favereau,

2    F-A-V-E-R-E-A-U.

3        Q.      The bate stamp of that?

4        A.      2179.

5        Q.      I thought it was.  All right, thank

6    you.  Now, in determining discipline for a

7    safety violation would the defendant consider

8    previous violations if they were more than a

9    year old in determining the level of discipline?

10              MR. KERMAN:  Just object to the

11          form of the question when you say would

12          the defendant.

13       Q.      (By Ms. Kelly)  To the best of the

14   defendant's knowledge did the defendant in

15   determining the level of discipline to apply for

16   a safety violation in the bonded abrasive

17   division between January 1, 1999 through January

18   1, 2004 consider previous safety violations that

19   were over a year old?

20              MR. KERMAN:  Just object to the

21          form of the question.

22              THE WITNESS:  Depending on the

23          stage of progressive discipline documented

24          discipline such as a written warning would

THOMAS OLIVER, 30(b)6
January 30, 2006

Page 60

1      Q.      Is it your understanding what

2   operators would do is indicate on the -- is it

3   the mix slip?

4      A.      This is a mix slip.

5      Q.      Indicate on the mix slip that

6   they -- you need to let me finish the question

7   because I know you know where I'm going with

8   it -- that they would mark the mix slip with NCC

9   to indicate that they were not able to use the

10  CON-CAM system for some reason?

11     A.      Yes.

12     Q.      Okay.  Was Mr. Novia a supervisor

13  in 2001 -- 2002?

14     A.      He was a group leader.  He was a

15  group leader on third shift for a stretch.  I

16  don't know the exact dates, but he was a group

17  leader.

18     Q.      That's all I have on that one.  Mr.

19  Novia, what is his race?

20     A.      White.

21     Q.      Mr. Dano, what is his race?

22     A.      White.

23     Q.      Mr. Hanson, what is his race?

24     A.      White.

THOMAS OLIVER, 30(b)6
January 30, 2006

Page 61

1      Q.    Mr. Johnson?

2      A.    White.

3      Q.    Mr. Reed?

4      A.    White.

5      Q.    Mr. -- I'm going to get it

6  wrong again -- Aboagye?

7      A.    Black.

8      Q.    Mr. Patnode?

9      A.    White.

10     Q.    Mr. Racca?

11     A.    White.

12     Q.    Mr. Ahl?

13     A.    White.

14     Q.    Mr. Agyeman?

15     A.    Black.

16     Q.    Mr. Gonyea?

17     A.    White.

18     Q.    Mr. Haynes?

19     A.    White.

20     Q.    Mr. Rodriguez?

21     A.    Well, Spanish.

22     Q.    Mr. Tyre?

23     A.    White.

24     Q.    Mr. Wiredu?

THOMAS OLIVER, 30(b)6
January 30, 2006

Page 62

| | | |
|---|---|---|
| 1 | A. | Black. |
| 2 | Q. | Mr. Constantine? |
| 3 | A. | White. |
| 4 | Q. | Mr. Stidsen? |
| 5 | A. | White. |
| 6 | Q. | Let me look through here quickly. |
| 7 | Mr. Gelardi? | |
| 8 | A. | White. |
| 9 | Q. | Mr. Koduah? |
| 10 | A. | George? |
| 11 | Q. | Yes. |
| 12 | A. | He's black. |
| 13 | Q. | Mr. Benson? |
| 14 | A. | Black. |
| 15 | Q. | Mr. Favereau? |
| 16 | A. | White. |
| 17 | Q. | Mr. Kimball? |
| 18 | A. | White. |
| 19 | Q. | Mr. Acquah? |
| 20 | A. | Black. |
| 21 | Q. | Mr. Aldrich? |
| 22 | A. | White. |
| 23 | Q. | Mr. Drake? |
| 24 | A. | White. |

**THOMAS OLIVER, 30(b)6**
**January 30, 2006**

Page 68

1      (Exhibit Number 88, Mr. Wiredu's records,

2      marked)

3

4      Q.    (By Ms. Kelly)  Showing you what is

5  marked Exhibit 88.  Look at the first page, is

6  that your signature?

7      A.    No.

8      Q.    That last one looks like Oliver.

9  Is that Mr. Wiredu's signature?

10      A.    Yeah, that's not me.

11      Q.    Looks more like Thomas Oliver than

12  Sam Wiredu.

13      A.    There's an O in there.  There's not

14  an O in Sam's name.

15      Q.    Okay.  What's your understanding of

16  the first page of this document, what does that

17  refer to if you know?

18      A.    Cleaning up earlier than he should

19  have, should have been producing.

20      Q.    I asked a bad question I get a bad

21  answer.  Is this a verbal counseling?

22      A.    This is verbal.

23      Q.    And it's dated 9/12/01?

24      A.    Yes.

**CATUOGNO COURT REPORTING SERVICES**
**Springfield, MA   Worcester, MA   Boston, MA   Lawrence, MA   Providence, RI**

**THOMAS OLIVER, 30(b)6**
**January 30, 2006**

Page 69

1      Q.      Do you know what the next page is?

2      A.      It's a manufacturing order.  The

3  second page of it shows Sam was a 15 press

4  operator.  Looks like signed up, signed up.

5  Okay, then you go to the next page.

6      Q.      I'm just trying to -- can you tell

7  me what the next two pages -- there's two pages

8  here that appear to be related because they have

9  the same slip number.

10     A.      Yes, these are attached.

11     Q.      What are these documents?  They

12 were included in Mr. Wiredu's personnel file so

13 I assume they are somehow performance related.

14     A.      Yeah.  It's on the top of a second

15 page with this check number on it.  See MO

16 quantity two?  Sam upped it to three and signed

17 it himself.  He can't do that.  He needs a

18 supervisor to sign it.

19     Q.      So this was a failure to follow the

20 ISO procedures by making a decision of his own?

21     A.      Yes, and a supervisor should sign

22 off on it.

23     Q.      And this was October 12, 2001?

24     A.      10/12/01.

**THOMAS OLIVER, 30(b)6**
**January 30, 2006**

Page 70

1    Q.    So this was a second counseling in

2  a month?

3    A.    Yes.

4    Q.    And what's the third -- the next

5  page?

6    A.    Third incident.

7    Q.    And is that a failure to sign an

8  MO?

9    A.    Yes.

10    Q.    So this is the third incident since

11  September?

12    A.    That's correct.

13    Q.    And do you have any knowledge as to

14  why Mr. Wiredu for his third incident since

15  September 12 was not moved up to written

16  reminder?

17    A.    No, I don't.

18    Q.    Showing you -- well, let's mark

19  this.

20

21    (Exhibit Number 89, Mr. Ahl's records,

22    marked)

23

24    Q.    (By Ms. Kelly)  Showing you what

**CATUOGNO COURT REPORTING SERVICES**
Springfield, MA   Worcester, MA   Boston, MA   Lawrence, MA   Providence, RI

**THOMAS OLIVER, 30(b)6**
**January 30, 2006**

Page 82

1        A.        That is my understanding, yes.

2                  MR. KERMAN:  Off the record.

3

4        (Break taken form 12:33 p.m. to 12:39

5        p.m.)

6

7                  MS. KELLY:  Back on the record.

8

9        (Exhibit Number 90, Mr. Koduah's records,

10       marked)

11

12       Q.        (By Ms. Kelly)  This is Mr.

13   Koduah's file, or at least here's some

14   documents -- showing you what has been marked

15   Exhibit 90 which are some documents involving

16   George Koduah.

17                  If you look at the first page it

18   indicates that Mr. Koduah is on a written

19   reminder; is that accurate?

20       A.        It's being issued for these

21   offenses.

22       Q.        And that's in July of 2000?

23       A.        Yup.

24       Q.        If you look at the third page is

**THOMAS OLIVER, 30(b)6**
**January 30, 2006**

Page 83

1   this a counsel?

2        A.      Quality counsel.

3        Q.      And the next few pages involving

4   that quality counsel?

5        A.      That's correct.

6        Q.      What is Mr. Koduah's job?

7        A.      He was a molder at this point.

8        Q.      And if you look at 8/25 Mr. Koduah

9   was given another counsel; is that accurate?

10       A.      That is correct.

11       Q.      And can you tell me what the next

12  three documents refer to?  They all appear to be

13  the same MO number.

14       A.      Are you referring to George -- on

15  16 press with the wrong glass.

16       Q.      The document that you're reading

17  from is dated January -- end of January,

18  beginning of February, 2000.  The three

19  documents before that all appear to involve

20  September?

21       A.      Yeah.

22       Q.      Of 2000?

23       A.      You have to look at --

24       Q.      So this appears to be unrelated I

**CATUOGNO COURT REPORTING SERVICES**
Springfield, MA   Worcester, MA   Boston, MA   Lawrence, MA   Providence, RI

**THOMAS OLIVER, 30(b)6**
**January 30, 2006**

Page 84

1    believe.

2         A.    Give me one second.

3         Q.    **Sure?**

4         A.    George molding one, 9/20.  You're

5    right, they don't refer to this document.

6         Q.    **Do you know what's wrong with these**

7    **three documents that they were placed in Mr.**

8    **Koduah's personnel file?**

9         A.    Nothing strikes me.

10        Q.    **Now, on this first page of these**

11   **three pages it says not in CON-CAM?**

12        A.    That's correct.

13        Q.    **And does this refresh your**

14   **recollection as to whether he was a molder?**

15        A.    He was a molder.

16        Q.    **So molders do use CON-CAM; is that**

17   **accurate?**

18        A.    This MO covers the whole

19   manufacturing operation so this is start to

20   finish.

21        Q.    **So this is not in CON-CAM is like**

22   **the NCC thing that you mentioned earlier?**

23        A.    Yes.

24        Q.    **Okay, all right.  I just wanted to**

**THOMAS OLIVER, 30(b)6**
**January 30, 2006**

Page 85

1    know if you could tell what was wrong with that

2    document.  All right, if you look at the

3    January, 2001 -- I'm sorry, we're not done.

4    Back to 02589 the one you were looking at.

5          A.    I'm sorry.

6          Q.    This one, the one you were looking

7    at a minute ago.

8          A.    Fine.  Okay.

9          Q.    Is this another verbal counsel?

10         A.    2589 is a verbal counsel, yes.

11         Q.    And I assume the next two pages

12   refer to that?

13         A.    That's correct.

14         Q.    And this one seems to be out of

15   order.  This January 11th, is that another

16   verbal counsel?

17         A.    That's right.  Second paragraph is

18   George Koduah safety issue.

19         Q.    So he was counseled for a safety

20   issue?

21         A.    Yes.

22         Q.    And the next page -- well, the

23   first paragraph, sorry, turn back to that

24   previous page.  The first paragraph was a

**CATUOGNO COURT REPORTING SERVICES**
Springfield, MA   Worcester, MA   Boston, MA   Lawrence, MA   Providence, RI

**THOMAS OLIVER, 30(b)6**
**January 30, 2006**

Page 86

1    quality issue?

2        A.    Different person, Joe Peppi.  I put

3    these in together.

4        Q.    Okay.  And the document with 02863?

5        A.    Yeah, I got you -- sorry.  Spoke

6    to...signed off routing issue.  Next page you

7    can see where he was supposed to sign off, he

8    didn't sign off.

9        Q.    So this was another verbal counsel

10   for failure to sign MO's?

11       A.    Yes.

12       Q.    And then the page after that --

13   two pages after that actually.  Would that be

14   another failure to sign an MO?

15       A.    It is a failure to sign.  Let me

16   just make sure.  It's a different MO, correct.

17       Q.    So we got another verbal counseling

18   for that?

19            MR. KERMAN:  Objection.

20            THE WITNESS:  If it's -- separate

21       incidence.

22       Q.    (By Ms. Kelly)  Okay.  And if you

23   look at 2867?

24       A.    This was a discussion that he had

**THOMAS OLIVER, 30(b)6**
**January 30, 2006**

Page 87

1    with George.

2              Q.      Okay.  Was that --

3              A.      George's explanation is correct in

4    this case.

5              Q.      What?

6              A.      Basically said that he didn't sign

7    this check.  What happens is that the next

8    operation for small orders and they get

9    consolidated onto a different grid.  So if he

10   wrote the grid down there it wouldn't match when

11   it went in the oven.

12             Q.      So you don't have to sign a

13   manufacturing order under those circumstances?

14             A.      Should note on here that it's going

15   to be -- it's something he should have done.

16             Q.      And if you look at the document

17   says 4/01/02 ship date.  The document for some

18   reason I can't find the bate stamp.

19             A.      2869.  Right in the middle, right.

20             Q.      Okay.  Is this another counseling?

21             A.      Counseling.

22             Q.      Okay.  Do you know why Mr. Koduah

23   was never moved to a written reminder?  Strike

24   that.  He has a written reminder on July 25,

**CATUOGNO COURT REPORTING SERVICES**
Springfield, MA   Worcester, MA   Boston, MA   Lawrence, MA   Providence, RI

**THOMAS OLIVER, 30(b)6**
**January 30, 2006**

Page 88

1    2000.  Do you know why he was never moved beyond

2    a written reminder?

3         A.    Just showed leniency.

4         Q.    And you don't know why?

5         A.    No.

6         Q.    Can a rescreener end up with heavy

7    pans?

8         A.    Yes.

9         Q.    And how does a rescreener end up

10   with heavy pans?

11        A.    Using the wrong screen.  The screen

12   has a scale on it telling how much weights in

13   it.  If he uses a screen that's larger than he

14   should when the screen shuts off excess is going

15   to come through so you would get in a large pan

16   it would overshoot the scale.  You still see the

17   records so he should have adjusted.  But it is

18   possible to happen.

19        Q.    Are you saying a rescreener acting

20   as a mixer or a rescreener acting as a

21   rescreener?

22        A.    Either.

23        Q.    So if a rescreener is acting as a

24   rescreener -- and maybe I'm not understanding

**THOMAS OLIVER, 30(b)6**
**January 30, 2006**

Page 95

1   aware of it sometime in history, but I don't

2   know when exactly.

3       Q.      Did you become aware of it --

4   strike that.

5               When you became -- during the

6   period in Mr. Aubin's chain of command did his

7   personnel file have a copy of the document

8   indicating that he had been disciplined for a

9   racial statement?

10      A.      That has always been in his file.

11  Once again it was sealed.  There was a point

12  when I did realize it was there.  I don't know

13  when.

14      Q.      Prior to this litigation?

15      A.      Yes.

16      Q.      If you look at the document marked

17  defendant's 02721 which is dated September 30,

18  1999.

19      A.      Did you say '99?  I'm sorry.

20      Q.      Yes, 2721 is this document.

21      A.      I have it, yup.

22      Q.      Look at that.

23      A.      Okay.

24      Q.      This is another counsel; is that

**CATUOGNO COURT REPORTING SERVICES**
Springfield, MA   Worcester, MA   Boston, MA   Lawrence, MA   Providence, RI

**THOMAS OLIVER, 30(b)6**
**January 30, 2006**

Page 96

```
 1    accurate?
 2         A.    Yes.
 3         Q.    That's the same month he had been
 4    put on a written warning?
 5         A.    That's correct.
 6         Q.    This was for failing to follow
 7    procedural rules, paperwork; is that accurate?
 8         A.    That's correct.
 9         Q.    Do you know what it was he had
10    failed to do?
11         A.    Let me just read it again, please.
12         Q.    Sure.
13         A.    He was bouncing from job to job and
14    he didn't fill out -- he didn't fill out the
15    work performed.  Not a routing slip.
16         Q.    Huh?
17         A.    He didn't fill out a routing slip.
18         Q.    Do you know is that essentially an
19    MO?
20         A.    Yes.
21         Q.    Did he -- is MacPac, was that
22    the --
23         A.    That was the production software at
24    the time.
```

**THOMAS OLIVER, 30(b)6**
**January 30, 2006**

Page 97

1      Q.     Was that previous to CON-CAM?

2      A.     No, different system.  CON-CAM was

3 mixing, MacPac was the entire process.

4      Q.     Did Mr. Aubin fail to do MacPac?

5      A.     He failed to take credit on the MO

6 for the work that he did as well as in the

7 computer.

8      Q.     So he failed to do both the MO and

9 the MacPac?

10     A.     Yes.

11     Q.     This says as you were all involved

12 or have ties to Dave Aubin.  Do you know which

13 individuals have ties to Dave Aubin?

14     A.     They all work in the same area.

15 That's all I can see from the names, some

16 supervisors, group leaders.

17     Q.     When you say ties you have no

18 reason to believe any of these individuals were

19 personal friends of Mr. Aubin or relatives?

20     A.     No, this is work.

21     Q.     So to the best of your knowledge

22 none of these people had --

23     A.     They supervised him in some way,

24 shape, or form.

**THOMAS OLIVER, 30(b)6**
**January 30, 2006**

Page 98

1    Q.    If you look at the next document?

2    A.    Okay.

3    Q.    Is that considered a safety issue?

4    A.    Yes, it is.

5    Q.    And this occurred as best -- do you

6    have any reason to doubt that it happened in

7    January of 2000?

8    A.    It happened in January of 2000.

9    Q.    So in January of 2000 while on a

10   written warning and having failed to do his

11   paperwork both within the last previous year he

12   was only counseled for a safety violation; is

13   that accurate?

14   A.    That's correct.

15   Q.    Do you know why he wasn't moved

16   onto another step of discipline?

17   A.    I have to say there must have been

18   some signs of -- well, one is -- they weren't

19   the same offenses for one.

20   Q.    Okay.  So if it wasn't the same

21   offense you wouldn't be moved to the next step

22   of discipline?

23         MR. KERMAN:  Objection.

24         THE WITNESS:  No, I couldn't say

**CATUOGNO COURT REPORTING SERVICES**
Springfield, MA   Worcester, MA   Boston, MA   Lawrence, MA   Providence, RI

**THOMAS OLIVER, 30(b)6**
**January 30, 2006**

Page 99

1        that for sure.

2            Q.      (By Ms. Kelly)  Okay.

3            A.      I'm trying to find reasons why it

4    wouldn't be and that might be one considered

5    possible.

6            Q.      If you don't know you can say you

7    don't know.  Do you know why Mr. Aubin was not

8    moved to the next step of discipline after being

9    placed on a written warning for a racist

10   statement, and then less than a month later

11   counseled for a procedural violation, and then

12   within I think four months committing a safety

13   violation?

14           A.      What I would take into this is the

15   fact that they were different offenses and they

16   didn't seem to repeat themselves.  So they were

17   viewed upon as -- just viewed, wasn't ready to

18   put him on -- well, terminate.

19           Q.      If you look at the next page, 2670.

20   Again, Mr. Aubin was still under written warning

21   at that point; correct?  It's 9/17/99.  I'd be

22   happy to show you the piece of paper.

23           A.      Yes.

24           Q.      What was this violation?

**CATUOGNO COURT REPORTING SERVICES**
Springfield, MA   Worcester, MA   Boston, MA   Lawrence, MA   Providence, RI

**THOMAS OLIVER, 30(b)6**
**January 30, 2006**

Page 100

1          A.      This was in a supervisor's opinion

2    Dave should have realized the fact there was an

3    error on the printed MO on the mix slip calling

4    for maybe too much furfural.

5          Q.      So this was a quality issue?

6          A.      A quality issue.

7          Q.      And this was a counseling?

8          A.      Yes.

9          Q.      If you look at the next page -- or

10   actually, if you look at the next page I think

11   it relates to that.

12         A.      Same thing.

13         Q.      And then if you look to page

14   202695, 5/14/00?

15         A.      That's correct.

16         Q.      Is this a safety violation?

17         A.      That's correct.

18         Q.      Is that a serious safety violation?

19         A.      Yes, it is.

20         Q.      And he's already under a written

21   warning at this point?

22         A.      That's correct.

23         Q.      And he's committed a safety

24   violation -- I'm sorry -- less than about four

THOMAS OLIVER, 30(b)6
January 30, 2006

Page 101

1    months before?

2         A.    Stack seven high?

3         Q.    Yes.

4         A.    That's correct.

5         Q.    And Mr. Aubin was counseled; is

6    that accurate?

7         A.    He was counseled, yes.

8         Q.    If you look at the next page, Mr.

9    Aubin didn't just have one pan that was

10   overweight did he?

11        A.    No, he had five or six.

12        Q.    And six pans overweight.  Do you

13   know why Mr. Aubin wasn't moved to the next

14   level of discipline?

15        A.    No.  Company showed leniency.

16        Q.    You said before you thought it must

17   have been because he hadn't committed the same

18   violation.  Is this a second safety violation in

19   less than six months?

20             MR. KERMAN:  Objection.

21        Q.    (By Ms. Kelly)  You can answer.

22        A.    Yes.

23        Q.    Okay.  Do you know what these next

24   two documents are?

**CATUOGNO COURT REPORTING SERVICES**
Springfield, MA   Worcester, MA   Boston, MA   Lawrence, MA   Providence, RI

**THOMAS OLIVER, 30(b)6**
**January 30, 2006**

Page 107

```
 1        A.      It's an inventory system of some

 2   kind.

 3              MR. KERMAN:  Also note this is

 4         beyond the scope of the 30(b)6.  It's a

 5         1998 document.

 6              MS. KELLY:  That's fine.  I'm

 7         asking because he testified earlier as

 8         part of the 30(b)6 about what was

 9         considered in later discipline which

10         we'll get to.

11        Q.      (By Ms. Kelly)  If you look at I

12   think it's a couple of documents dated 2351?

13        A.      Yes.

14        Q.      And it's a verbal counsel?  Would

15   that be a verbal counsel?

16        A.      Yes.

17        Q.      And if you look at the next page,

18   do you know if this is a verbal counsel?

19        A.      Give me one second, please.

20        Q.      Certainly.

21        A.      Less of a verbal counseling more of

22   the group leader explaining why he was doing

23   what he was doing as far as keeping an eye on

24   Joe.
```

**CATUOGNO COURT REPORTING SERVICES**
Springfield, MA   Worcester, MA   Boston, MA   Lawrence, MA   Providence, RI

**THOMAS OLIVER, 30(b)6**
**January 30, 2006**

Page 108

1       Q.      Okay.

2       Q.      So this is a note to the file but

3    not a counsel?

4       A.      Yes.

5       Q.      If you look the next few pages are

6    preprinted forms and then you get to document

7    2356.  Is that a verbal counsel?

8       A.      Yes.

9       Q.      The next page that's another verbal

10   counsel dated 6/18/99?

11      A.      Okay.  Yes.

12      Q.      If you turn to the next typed page

13   dated August 4, 1999.  Is that another verbal

14   counsel?

15      A.      Looks to me they were questioning

16   why Worcester Police took him into custody, and

17   they were concerned -- looks like they were

18   concerned about his well-being because he was

19   displaying tendencies or attitude that was

20   unlike him, and they were offering him help.

21      Q.      He was already on a verbal warning

22   for attendance; right?

23      A.      Yes.

24      Q.      And he didn't report to work today.

**CATUOGNO COURT REPORTING SERVICES**
Springfield, MA   Worcester, MA   Boston, MA   Lawrence, MA   Providence, RI

**THOMAS OLIVER, 30(b)6**
**January 30, 2006**

                                                    Page 109

1    You don't think this was a counseling?

2              MR. KERMAN:  Objection.

3         Q.    (By Ms. Kelly)  You can answer.

4    First I explained that his attendance hadn't

5    been as good as it should have been.

6              MR. KERMAN:  I just object this is

7         obviously not part of the 30(b)6 by

8         definition.  He's speaking -- questioning

9         him in his individual capacity not as a

10        30(b)6 representative.

11             THE WITNESS:  To me they were

12        making him aware of some issues.  I don't

13        know if I'd call it a counseling.

14        Q.    (By Ms. Kelly)  Look at the next

15   page?

16        A.    Yup.

17        Q.    Is that a counseling, the quality

18   issue?

19        A.    Yes, it was.

20        Q.    If you look at document 1836, is

21   that a counseling, the quality issue?

22        A.    Yes, it was.

23        Q.    The next page appears to be the

24   same date?

Page 110

1      A.      Same issue.

2      Q.      **Now -- okay.  If you look at 1835?**

3      A.      Okay.

4      Q.      **Is there supposed to be a mixed**

5  **time on that document?**

6      A.      I would assume, yes.

7      Q.      **So in addition to having a quality**

8  **issue this individual had failed to fill out an**

9  **MO completely?**

10      A.      When I say I assume I mean I'm

11  assuming that there should be -- there is

12  something there.  Looks like 29.

13      Q.      **1835?**

14      A.      Looking at the mix -- I don't know

15  if that's some kind of time or stamp.  Looks

16  like something 29.

17      Q.      **Was the individual who makes mixes**

18  **supposed to write in the mix time?**

19      A.      I'm not completely sure, no.

20      Q.      **Now, did they use a CON-CAM system**

21  **at that point?**

22      A.      This is Plant 7.  They had an

23  inventory tracking system.  I'm not even sure

24  how they referred to it, or how it was used.