# <u>NOTE TO FILE</u>

ON FRIDAY, 12/20/02, I SPOKE WITH
PASQUALE GAIMARI ABOUT HIS
ATTENDANCE. PASQUALE HAS HAD
THREE OCCURRENCES OF ABSENCE IN
A NINETY-DAY PERIOD. I EXPLAINED
THE POLICY TO PASQUALE AND HE
UNDERSTANDS THAT FUTURE
OCCURRENCES COULD RESULT IN A
WRITTEN REMINDER.

JOE MARTINI
12/20/02

CONFIDENTIAL



# NOTE TO FILE

ON FRIDAY, 12/20/02, I SPOKE WITH PASQUALE GAIMARI ABOUT HIS ATTENDANCE. PASQUALE HAS HAD THREE OCCURRENCES OF ABSENCE IN A NINETY-DAY PERIOD. I EXPLAINED THE POLICY TO PASQUALE AND HE UNDERSTANDS THAT FUTURE OCCURRENCES COULD RESULT IN A WRITTEN REMINDER.

JOE MARTINI
12/20/02

CONFIDENTIAL

DEF01638

# Note To File

On Tuesday, 1/07/03, I spoke with Pasquale
Gaimari about getting to his work station on time
at the start of his shift. Pat was standing at the 40"
facer, talking to Tom Carlo at 5:08am. Pat's shift
starts at 5am. I told Pat that he should be at the
arter grinder and have it running by 5am.

Joe Martini
1/07/03

CONFIDENTIAL

DEF01582

(4)

# Note To File

On Tuesday, 1/07/03, I spoke with Pasquale Gaimari about getting to his work station on time at the start of his shift. Pat was standing at the 40" facer, talking to Tom Carlo at 5:08am. Pat's shift starts at 5am. I told Pat that he should be at the arter grinder and have it running by 5am.

Joe Martini
1/07/03

CONFIDENTIAL

(5)                     3/8/03

ON SATURDAY 3/8/03 I APPROACHED
PASQUALE GALVANI ON A SAFETY
CONCERN. ON THE 20" ANTON GRINDER
HE HAD THE DIAMOND WHEEL HANDLE
TIED OFF SO THE DIAMOND WAS
SIDING FREELY NO HANDS WERE ON
THE HANDLE CONTROLLING THE WHEEL AS
IT WAS SIDING PRODUCT. I TOLD HIM
HE SHOULDN'T BE DOING THAT.

ON MONDAY 3/10/03 6:00 AM HE STILL
HAVE IT ON MYSELF AND CHARLIE H.
SPOKE TO HIM ABOUT IT AGAIN AND TOLD
HIM TO REMOVE ELASTIC THAT WAS TIEING
OFF HANDLE.

DEF01634

*[signature]*

CONFIDENTIAL

**MEMORANDUM**

Charlie Heffelfinger

NORTON

2003

Operating the After Guard
with the Safety Shield
open —

Operating the After Guard
with Rubber bands
attached to the swing
arm —

CONFIDENTIAL

DEF01635



*3/26/03*

*To Pasquale Gaimari's File:*

*Today we are counseling Pasquale on failing to report an injury when it happened.*

*On Wednesday 3/19/03 Pasquale was changing a wheel on the Arter Grinder. While making that change he hit his wrist with a hammer and on Monday 3/24/03 he reported the injury to his Group Leader (Peter Mallozzi). Peter in return reported it to me. That same day Jim Agurkis and myself discuss this delayed report with Pasquale. Pasquale got very defensive with Jim. Jim then sent Pasquale to the clinic. I referred to a training session we had on reporting accident when they happen on 12/10/98. At which time each employee signed a Safety Violation Disclosure. Today we discuss this training session with Pasquale, he replied to me that, that was in 1998 I replied that we didn't stop reporting in 2000. It is your responsibility to report injuries when they happen.*
*I informed him that this can't happen again. You must report injuries right away.*
*I also informed him the next step would be progressive disciplinary action, that this was his verbal counseling. This conversation took place in my office.*

*Charlie Heffelfinger*





3/26/03

*To Pasquale Gaimari's File:*

*Today we are counseling Pasquale on failing to report an injury when it happened.*

*On Wednesday 3/19/03 Pasquale was changing a wheel on the Arter Grinder. While making that change he hit his wrist with a hammer and on Monday 3/24/03 he reported the injury to his Group Leader (Peter Mallozzi). Peter in return reported it to me. That same day Jim Agurkis and myself discuss this delayed report with Pasquale. Pasquale got very defensive with Jim. Jim then sent Pasquale to the clinic. I referred to a training session we had on reporting accident when they happen on 12/10/98. At which time each employee signed a Safety Violation Disclosure. Today we discuss this training session with Pasquale, he replied to me that, that was in 1998 I replied that we didn't stop reporting in 2000. It is your responsibility to report injuries when they happen.*
*I informed him that this can't happen again. You must report injuries right away.*
*I also informed him the next step would be progressive disciplinary action, that this was his verbal counseling. This conversation took place in my office.*

*Charlie Heffelfinger*



DEF01626

## SUMMARY

Violations of Company regulations, subject to discipline but not cause for immediate dismissal, require individual study. No volume of rules or Company regulations or department instructions define every situation and/or assure that every supervisor will recognize every situation. For example, a supervisor may not immediately recognize the safety or security problems caused by illegal parking or the morale problem created in other departments by allowing some of their employees to violate regulations such as going without safety glasses or extending break periods. Supervisors should collectively recognize situations which deter safe and efficient operations and are responsible for communication and discipline required to correct those situations.

Supervision should make employees aware of the Company's regulations and expected behavior as often and regularly as possible. This training will be supplemented with additional instruction or information from other departments such as Engineering, Security, Safety, and Personnel. Periodically these departments will issue or provide notices, manufacturing instructions, booklets (You and Norton, Personnel Guide), and training courses to support line managers in conducting their respective operations.

## DISCIPLINE PROCEDURE

A. **Formal Counsel**
When an employee violates regulations or deviates from expected behavior, the supervisor should formally counsel the employee regarding standards, rules, etc., and the reason for them. Mutual understanding and commitment to alleviate the problem should be achieved in this session. The supervisor should document this session for their records and advise employee of next step if problem is not corrected.

B. **Written Reminder Form #6831 (See Figure 1)**
When a second or other violation occurs within a 6 month period, counsel employee again and issue this written reminder. This provides written documentation acknowledged by employee. Advise employee of future consequences if the problem is not corrected. Depending on the problem, the Employee Relations Administrator could be involved at this point. Retain written reminder for no longer than twelve months.



CONFIDENTIAL

DEF01627

**Section 111-20, part A, Cause of Discipline or Discharge from the Supervisors personnel Book, cause for Counseling or Discharge.**

Absenteeism

Tardiness

Carelessness

~~Poor Work habits~~

Safety Violations

Harassment of Other Employees

Not Following Standard Procedures

Violation of Code of Ethics

CONFIDENTIAL

DEF01628

# ABRASIVES SAFETY VIOLATION POLICY

- In The Supervisor's Personnel Guide, Policy 111-20, Safety Violations are considered cause for counseling or discharge. These safety Violations include but are not limited to the following:

- Any wrongful use of machinery, processes or equipment.

- Removal of any guarding from machines or equipment

- Blatant Unsafe Acts.

- Failure to use (PPE) Personal Protective Equipment in designated areas or for specific tasks.

- Failure to wear Protective Eyewear (Safety Glasses) and Footwear (Safety Shoes) while working in the factory.

- Any Horseplay.

- Failure to report any unsafe incidents; accidents; near misses or illnesses immediately to your supervisor or group leader.

CONFIDENTIAL

DEF01629

# Norton Company

## Safety Violations Disclosure Statement

My signature below indicates that I have received and read a copy of the Abrasives safety violations policy along with a copy of Section III-20 of the Supervisors Personnel Guide. I understand that any deliberate violation of this policy may be cause for disciplinary action or dismissal from the Company.

Signature: _Raymond Simmons_    Date: 12-10-98

CONFIDENTIAL

DEF01630



June 3, 2003
9:30 a.m.

*To Pasquale Gaimari's File*

*Today @ 8:50 a.m. I was on the shop floor standing in the aisle between pole numbers CC/19 & EE/19 near inprocess inspection, as soon as the clock near the cement shop turned 8:53, even with me standing there Pasquale had the audacity to shut off his machine, the Arter Grinder and go on break to the cafeteria.*

*He returned from the cafeteria @ 9:00. I was still standing in the same spot, he held his arms out as to say WHAT!. I motioned for him to come to me. I ask him if I reminded him of a rubber band. He relied why? I said just how far do you think you can stretch me?*

*I explained to him even with me standing right here you had the audacity to go on break @ 8:53 Pasquale said I'm just following everybody else's lead.*

*I then told him that I expect him to be back on and operating his machine by 9:10. Pasquale ask why are you only watching me. I said I'm watching the whole department.*

*Pasquale then continued on his break until 9:10 at which time he returned to his machine. He put his ear plugs in then came right back over to argue with me about others. I told him to go to work and don't think your going to argue with me here until 9:15. I also told him if he didn't go back to work I'd be putting him on a warning.*

*Pasquale said I have an issue, I said no I have the issue, now go back to work and if you don't we'll be seeing someone else. Meaning my Supervisor or Human Resources upon their return to work after the training they are engaged in.*

*Pasquale started working at 9:12 a.m..*

*This letter will be discuss with my Supervisor.*



DEF01624

At 10:00 a.m. I noticed Pasquale was coming back in from the Truing dock I ask him where he was and he told me he went to see Rick Zeena but he wasn't there. I said to him he could go see anyone, however he should let me know that he'd be gone, that way I wouldn't be looking for him.

At approximately twenty minutes of eleven Pasquale came to my office. He said do you want to try and talk this out. I said if you wish to, but I'm not going to sit here and continue arguing about you not working when your suppose to be.

Pasquale feels I'm singling him out. I told him that he doesn't know what action I've taken on other people and that I wouldn't discuss anyone else.

We discuss him continually being away from his machine when he is suppose to be working. I explained the break and clean-up policy with him. He stated well I have to get away from the machine every now and the so I don't go crazy. I used the example of not being in the military where you get a ten minute break ever hour. That the company has work rules and that it is one of my jobs to see that they are followed.

Charlie Heffrig    6/8/03

CONFIDENTIAL

DEF01625



To Pasquale Gaimari's file                    *January 31, 2004*

*Just a few minutes ago between 9:00 a.m. and 9:30 a.m. I observed Pasquale performing two (2) unsafe work practices while standing in the Large Wheel Stripping area. (1) Pasquale turned down the grinding head wheel by using his right foot, (2) he then was grinding the wheel with the safety guard open. As I was approaching Pasquale he noticed me coming in his direction and immediately close the safety shield. I walked up to the Arter Grinder and said to him TOO LATE I already saw you performing (2) unsafe acts. (1) operating the grinding wheel head with your foot and grinding a wheel with the Safety shield open..*

                                                *Charlie Heffelfinger*

CONFIDENTIAL

CONFIDENTIAL

(13)

DEF01615

**MEMORANDUM**
Charlie Heffelfinger

NORTON

3/26/04

To Pasquale Germain's file

Today around 10:15 AM
I observed Pasquale operating
the after grinder facing
the In process inspection
area. Not watching what
he was doing.

instead watching stripping
In process Inspection + Drill
press

When I ask Pasquale shouldn't
you be watching what your
doing while grinding wheels
for 5 cents.

I reported this incident
to Both Jim Aguekis & Kathy Cent

→

CONFIDENTIAL

today Mon. 3/29, I also
reported this at the Center of
Safety Committed meeting

CONFIDENTIAL

DEF01616



4-9-04

## ABRASIVES INCIDENT INVESTIGATION REPORT
*MUST BE COMPLETED BY THE SHIFT SUPERVISOR NO LATER THAN 24 HOURS AFTER THE INCIDENT*

Name PASQUALE GAIMANI

Dept L.W. FINISHING PLT. 8

Location of Incident :

Witness:

Incident Hx past 3 years

Hours on job: 2 1/2

Date of Report

Job: 20" ANTEN GRINDER

Experience in job: 4 YEARS

Near Miss: X

First Aid: ☐
Recordable: ☐
Lost Time: ☐
Restricted: ☐
Undetermined: ☐

Shift: 1ST          Date of Incident: 4/7/04     Time of Incident 7:30AM     Dept L.W. FINISHING

Description of Incident: PAT WAS PULLING IN A HOT PRESS 18" FLUTER
ON SIDING TABLE IN CHUCK. WHEN HE STATED TO SIDE WHEEL
THE CAME OUT OF CHUCK AND BOUNCING AROUND INSIDE OF
MACHINE FOR A WHILE. PAT LEFT MACHINE NOT HITTING ANY OF

Facts of Investigation: THE EMERGENCY STOP BUTTONS.
HOT PRESS WHEELS ARE USUALLY WARPED. BOTH SIDES SHOULD BE
CHECKED BEFORE SIDING. SAFETY GUARD WAS CLOSED.

Basic Causes: WHEEL DID NOT SIT FLAT ON TABLE. THE WHEEL
WAS NOT FLAT.

Corrective Actions: SHOULD CHECK BOTH SIDES OF WHEEL FIRST
THEN TAKE OFF HIGH SPOT FIRST.

Completed By: Peter Mallo 331 Y           Date to be Completed: 4/8/04

Further Investigation:                     By:

Work Order:              Date:             To:

JHA needed:              Training Review:   Training Manual Needs Updating: Yes ☐ No ☐

Employee: _____          Manager: _____     Date: _____

Supervisor: _____    Date: _____   Safety Coordinator: _____   Date: _____

CONFIDENTIAL

DEF01611

Page: 1 / 6
Plant: 4280

Date: Mar 04, 2004.

SAINT-GOBAIN ABRASIVES.

Ship Date
Apr 13, 2004

KENNAMETAL IPG
470 OLD EVANS RD EVANS
GA 30809

6625342549

Manufacturing Order Number:
Production Order Type:
Matl Mstr:

100106020
ZP04
6625342549

Start Date: Mar 26, 2004
Finish Date:    Apr 08, 2004

100106020

0004280621

DEF01612

Order Qty: 20 PC

Mold Qty: 22 PC

Ext GG   57A320-S9B
SO# 10147926; Item# 000020

Int HG   5G10A320-S9B
PO#IKAG5391
EU:37 Flute Grinding

Wheel Type:01 Straight
Dimensions/Description: 01 _18"x.500"x10"_5G10A320S9B.
FLUTING
18" X .500" X 10"
Norton

Class: BWHEEL
Localspec1:57A-320

MOLD ON LH3 Prod Class: 93 - AION V9
          OD          TK          ID          TV
UPPER LIMIT   18.187(+3/16)   0.510((+ 0.0100)   +0.010   0.01
LOWER LIMIT   17.875(-1/8)    0.500(-0)          +0.002
SOURCE   0000-518   EUSE-580   0000-534
Safety works.  Excuses don't!

| Operation Number/ Description | W/C# | Schedule Start Date | Clock# | Actual Qty Date Good | Qty Bad | Scrap Code | Confirmation Number |
|---|---|---|---|---|---|---|---|
| 6010  PP&C PRINTED AND FILED Machine # PPC | PLN | Mar 26, 2004 | | | | | |

CONFIDENTIAL

## Zeena, Richard J.

| | |
|---|---|
| **From:** | Zeena, Richard J. |
| **Sent:** | Tuesday, April 27, 2004 5:28 PM |
| **To:** | Heffelfinger, Charlie L.; Chanis, Chris P.; Balding, Alan R. |
| **Subject:** | Pasquale Gaimari |
| **Sensitivity:** | Confidential |

I received a call from Pasqaule Gaimari (14:22) on 27 April 2004 – VM asking me to call him.

I called him at 17:05. I asked him if he knew why I was calling. He said he heard we were at his machine today. I asked him how he knew that. He said the word got back to him from the shop. I asked him if he knew why we were at his machine. He said that we found an elastic on a handle. I asked him why it was there. He told me that it is a safety device that holds work arbor from coming forward. I asked him if CLH had told him not to do this. Pasqaule said he thought he did. I informed him that this is a very serious safety issue and that he is suspended effective immediately while we conduct the investigation. He told me that he should be rewarded for using the device. I told him that he was not to return to work until he heard back from me.

(508) 887-2289

Rick Zeena
Human Resources Manager, Bonded Abrasives
Saint-Gobain Abrasives, Inc.
One New Bond Street
P.O. Box 15008
Mail Stop 115-101
Worcester, MA 01615-0008
phone: (508) 795-2163
fax: (508) 795-4009
e-mail: richard.j.zeena@saint-gobain.com

CONFIDENTIAL

DEF01598

4/27/2004



CONFIDENTIAL

DEF01608



CONFIDENTIAL

DEF01609



CONFIDENTIAL

DEF01610

RE: Pasqual Gaimari SS# 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
Co: Saint-Gobain Abrasives, Inc.

p. 2

# Discharged Form

*Deliberate* = *intentional conduct or inaction which the employee knew was contrary to the standards of behavior that the employer has a right to expect; violation of policy; misconduct*
*Not deliberate* = *unable to perform the job; mutual agreement; unsuited; no misconduct*

**If deliberate:**

1-What was the **final incident** that caused you to discharge this person? — *employee blatantly bypassed a safety mechanism (i.e. a side seal) and tried to camouflage the act from his supervisor.*

2-How did the person know that they would be discharged? (send us copy of final warning) *A meeting took place on 5-5-04 following an investigation and the employee was terminated after admitting to above facts.*

3-Date of final incident *4 5 -2004*          4-Last day of work *4/26/04*

5-If last day of work & final incident dates are different, explain why: *Employee was suspended & finished at task during investigation and during discipline discussions w/ h. r. jer.*

6-Who should we contact for detailed information if needed by the unemployment office?

Name       Rick Zeena

Email   Richard.J.Zeena@saint-gobain.com

Phone # 508-795-2163

**If not deliberate:**

☐ unable to perform the job      ☐ mutual agreement      ☐ unsuited/poor job fit

CONFIDENTIAL

DEF01578