UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Robert Briddell, | ) |
|     Plaintiff, | ) |
| | ) Civil Action No. 04-40146-FDS |
| Saint-Gobain Abrasives, Inc., | ) |
|     Defendant. | ) |
| | ) June 7, 2006 |

### PLAINTIFF'S OPPOSITION TO MOTION TO STRIKE AFFIDAVIT

The Plaintiff alleges race discrimination and retaliation for opposing conduct that the Plaintiff reasonably believed to be discriminatory. Defendant Saint-Gobain Abrasives Company has moved for summary judgment. The Plaintiff responded to the Motion with a Memorandum in Opposition, supported by extensive deposition testimony, documentary evidence, and affidavits of witnesses including the Plaintiff. The Defendant, in turn, submitted a 15 page reply memorandum plus a six page Motion to Strike the Plaintiff's Affidavit (Document 45). This memorandum is submitted in opposition to the Motion to Strike.

### APPLICABLE LEGAL STANDARD

Respondent cites the correct legal standard for a motion to strike an affidavit submitted in opposition to a motion for summary judgment. "When an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed." Colantouni v. Alfred Calcagni & Sons, Inc., 33 F.3d 1, 4-5 (1st Cir. 1994) (cited in Defendant's Motion to Strike at 5). As this quotation makes clear, an affidavit will be stricken only if there is a

clear and unambiguous contradiction between the affidavit and the deposition testimony of the witness. Gillen v. Fallon Ambulance Service, Inc., 283 F.3d 11, 26 (1st Cir. 2002); Hernandez-Loring v. Universidad Metropolitana, 233 F.3d 49, 55 (1st Cir. 2000). As the court held in Lowery v. Airco, Inc., 725 F.Supp. 82 (D. Mass. 1989) (also cited in Defendant's Motion to Strike at 5-6), the court should examine any alleged conflict carefully to determine whether there is a direct and unambiguous contradiction.

In the instant case, while citing the correct standard, the Defendant makes no effort to apply this standard to the Plaintiff's affidavit. Rather, the Defendant quotes from 14 paragraphs of the Plaintiff's Affidavit and responds to those 14 paragraphs with its own version of the facts. This is not a basis for striking any portions of the affidavit.

**THE SPECIFIC ITEMS IN THE Defendant'S MOTION TO STRIKE**

The Defendant moves to strike the following 14 statements in the Plaintiff's Affidavit.

1. In paragraph 5 of his affidavit, the Plaintiff states:

   When the Defendant took over [the operations of what had previously been the locally owned Norton Company], there were a few African American supervisors in the Bonded Abrasives Division of Plant 8. One of these supervisors, John Vasseur told me that he was being discriminated against by the Defendant and forced out. Within a few years of Saint Gobain taking over, all of the African American supervisors had left and had been replaced by white employees.

The Defendant moves to strike the last sentence of this paragraph. The Defendant cites **no** deposition testimony to contradict this statement. Instead of citing conflicting evidence, as required by the case law that the Defendant purports to rely upon, the Defendant claims that the Plaintiff lacks personal knowledge of this statement. This is an argument that the Defendant could have made in it opposition to

the Motion for Summary Judgment, but it is not a basis for a motion to strike.

Moreover, there is more than an ample foundation for the Plaintiff to make this statement. The Plaintiff was employed at the plant in question from 1985 until 2002, including the period of the events described in this paragraph of his affidavit, (M. Tivnan Dep. Ex. 3 p. 1433; Briddell Aff. ¶3). The Plaintiff was therefore personally able to observe that there were African American supervisors in the factory before the Defendant took over, and that they were gone soon afterward. The Plaintiff was told by one African American Supervisor, Vasseur, that he was being forced out. Thus, there is an adequate basis for this paragraph of his affidavit, and a reasonable basis for him to form the belief that the Defendant was engaged in discriminatory practices. Such a reasonable belief is one of the elements of his retaliation claim.

2.   In paragraph 6 of his affidavit, the Plaintiff avers:

> At no time after the Defendant took over were African American or black employees promoted or hired into a supervisory positions [sic] in the Bonded Abrasives Division. I believe that this was the result of racial prejudice.

Again, the Defendant cites no contradictory deposition testimony. The Defendant asserts that the first sentence should be stricken for lack of a proper foundation. Again, there is a foundation, in that the Plaintiff worked at the plant and he saw, first-hand, who worked there and who supervised other employees. He saw that there were no African American or black supervisors. Moreover, the accuracy of the Plaintiff's observation regarding the racial composition of the Defendant's supervisory workforce was confirmed by Dennis Baker, the Defendant's Vice President of Human Resources, and by supervisor Michael Tivnan. Baker acknowledged that the Defendant has employed varying numbers of officers and managers, ranging from a

3

high of 172 in 2002 to a low of 128 in 2004 (Baker Depo. Ex. 36 pp. 1034, 1042). Throughout the five year period from 2000 through 2004, none of these supervisors has been black (Ibid). Michael Tivnan unambiguously testified that since Saint Gobain took over there have been no African American supervisors. (See Deposition testimony of Michael Tivnan at 95-96 attached hereto as Exhibit A)

The Defendant moves to strike the second sentence of paragraph 6 of the affidavit on the ground that it represents "inadmissible opinion." Certainly, this statement represents the Plaintiff's opinion. This case involves a retaliation claim. One of the elements of that claim is whether the Plaintiff reasonably believed that the Defendant practices racial discrimination against blacks. The statement that the Plaintiff had such a belief is a relevant and necessary element of his claim. The undisputed evidence that all black supervisors left the Norton Company after the Defendant took over, that at least one of those supervisors complained to the Plaintiff that he was being forced to leave, and that the Defendant now employs no blacks in management or supervisory positions, all tend to establish that his belief was reasonable.

3.  In paragraph 7 of his affidavit, the Plaintiff states that he was told that he would have to take a basic skills test to obtain a promotion, that white employees were not required to take such a test, and that he complained about this discriminatory practice.

Again, the Defendant contends that the Plaintiff had no foundation for his belief that white employees were not required to take this test. Rick Zeena, the Defendant's Human Resources Manager, testified that the only two employees, the Plaintiff and Atta Addo-Aikins, had been required to take the basic skills test in order to obtain a

4

promotion (Zeena 3, pp. 49, 53-54). Like the Plaintiff, Addo-Aikins is black. Thus, the Plaintiff's belief that it was discriminatory for the Defendant to direct him to take this test was reasonable.

The Defendant contends that the statement by the Plaintiff, in his affidavit, that he complained that requiring him to take the test "was racist" is contradicted by his deposition testimony. The Defendant cites to 8 pages in the Plaintiff's deposition which supposedly contradict this assertion (Motion to Strike at 2, citing Briddell Depo. 30-37). The Defendant points to no specific statement anywhere on those pages that would constitute a direct and unambiguous contradiction of his affidavit. On the contrary, on page 36 of his deposition, after testifying about the requirement that he take the test, the Plaintiff stated:

> When Tom Oliver told me that I couldn't get the job that night, I went into the office and used the phone. There were about three or four supervisors in there talking. I asked them to use the phone. They said yeah, Bob, go ahead. I talked on the phone to my wife and I told my wife what was happening and I thought I was being treated unfair and to contact our lawyer and the NAACP and pursue it.

(Briddell Depo. 36, a copy of which is attached to the Motion to Strike). Thus, the Plaintiff testified at his deposition that, in the presence of three or four of the Defendant's supervisors, he stated that it was unfair to require him to take the test and that he intended to contact an organization established to fight racism. This testimony is certainly consistent with the statement in his affidavit that he complained that the requirement that he take the test "was racist." Moreover, Oliver's notes of the meeting unambiguously state that Briddell complained that, "he deserved the chance to see if he could do the job just like any other man. He said that upper management looked for a reason not to give him the job. He stated that he had lived through <u>racism</u> and

oppression all of his life and this was not right". (Zacklow Deposition Ex. 49, emphasis added). Thus, the Defendant's own documents reflect that Briddell complained of racism.

4.  In paragraph 8 of his affidavit, the Plaintiff avers that he complained to Steven Stockman, the Defendant's Vice President, and to Zeena about the discriminatory requirement that he take the test. The Defendant contends that this testimony should be stricken because "he never asserts he discussed this 1998 incident during any conversations with Mr. Zeena or Mr. Stockman." The Defendant does not point to any contradiction with his deposition testimony. (Motion to Strike at 3). This falls far short of the standard under Colantouni of showing a clear and unambiguous contradiction. The fact that this never came up in the deposition is not grounds for striking the statement from the affidavit.[1]

5.  In paragraph 11 of his affidavit, the Plaintiff avers that he was disciplined for conduct that was tolerated in employees who had not protested discrimination. The Defendant moves to strike this averment without citing any contradictory deposition testimony. The Defendant contends that this statement should be stricken as "conclusory." The Defendant cites no precedent for its contention that an affidavit should be stricken on this basis. Perhaps, if this were the only proffered evidence of discrimination, it would be insufficient to defeat summary judgment. However, the Plaintiff has offered extensive evidence that the Plaintiff was disciplined for conduct that

---

[1]  The Defendant also points out that Zeena was not employed at the time of the test incident (Motion to Strike at 3). This does not contradict the affidavit, because the Plaintiff does not claim that he complained about the incident at the time it occurred. Rather, his assertion is that he cited this as an example of the Defendant's discriminatory employment practices.

6

was tolerated in other employees (See Plaintiff's Local Rule 56.1 Statement of Material Facts in Dispute, ¶¶ 42, 43, 44, 46, 52, 53, 59, 89, 91, 92, 97, 98, 102, 103, 104, 105, 106, 107, 108, 109, 111, 112, 113, 114, 117, 130, 131, 132 and citations to evidence contained in those paragraphs).

This paragraph of the affidavit should not be stricken.

6.   In paragraph 12 of his affidavit, the Plaintiff states

> There are many things that could cause a pan to be heavy that would be out of my control as a mixer. For example, after the pans had been mixed and were waiting in a holding area, another mixer, rescreener or molder could add recycled mix to my pans. Pans could also be heavy in [sic] the mix scale was not program correctly or did not "tear off" I believe that the Defendant was aware of this when I was disciplined [for overweight pans]."

Once again, the Defendant does not cite any direct conflict with anything in the Plaintiff's deposition. Instead, the Defendant argues that this statement constitutes speculation on the part of the Plaintiff. That argument is simply wrong. As a long time employee with extensive experience as a mixer for the Defendant, the Plaintiff is in a position to offer testimony about what can happen to a mix. His testimony in this regard was corroborated by three co-workers (Gustafson pp. 67-71, 83-86, 90-91; Lebeau pp. 43-49; McTernan pp. 24-25) and by supervisors Michael Tivnan, Jeff Clark, and Thomas Oliver. (M. Tivnan pp. 30-33; Clark pp. 226, 229-230; Oliver 3 pp. 4-51).

Nor did the Plaintiff testify in the manner that the Defendant claims. The Defendant asserts that the "Plaintiff testified in his deposition that he is not contending that another employee did anything to cause his pans to be overweight." (Motion to Strike at 3). In the testimony cited by the Defendant, the Plaintiff explained that he was never given a chance to examine the allegedly overweight pans. He denied that the pans were as heavy as the Defendant claimed (Briddell I at 174-75). He was then

asked, "Are you claiming that after you made the pans, someone else threw in extra waste <u>to make them overweight</u>." (Ibid, emphasis added). Briddell denied that he was making this claim. Thus, his testimony was that he did not believe anyone had deliberately added waste to these particular pans for the purpose of making them overweight. He was not asked whether waste mix balls could have been added to the pan to recycle the mix or about the other potential causes of overweight pans.

8.  In <u>paragraph 15</u> of his affidavit, the Plaintiff states that "other employees failed to sign M.O.'s and failed to use the Con-Cam system but were not disciplined." The Defendant cites no conflicting deposition testimony to support this motion. Instead, the Defendant cites testimony by the Plaintiff that he did not report another employee when he noted that the other employee had failed to sign an M.O. This is hardly in conflict with his testimony that the failure to sign M.O's was common. The Plaintiff's testimony on this point was corroborated by other employees and by the testimony of some of the Defendant's own supervisors (See Plaintiff's Local Rule 56.1 Statement of Material Facts in Dispute, ¶¶ 42, 106, 107-109, 112-114 and citations to evidence contained in those paragraphs). This paragraph should not be stricken.

9.  In <u>paragraph 16</u> of his affidavit, the Plaintiff states that he protested to supervision "that I was being treated differently than other employees who failed to sign M.O.'s." The Defendant claims that this statement is inconsistent with three pages of the Plaintiff's deposition. The Defendant does not point to any particular inconsistent testimony. Rather, the Defendant merely argues that this should be stricken because the Plaintiff failed to mention his protests in the deposition. The Plaintiff was never asked if he protested that the warning for failing to sign the M.O.'s was disparate treatment. Thus, there is no clear and unambiguous conflict, and the affidavit should

not be stricken.

10.    In paragraph 18 of his affidavit, the Plaintiff testified that he denied making a 68 pound mix. The Defendant's Motion to Strike with respect to this assertion reads in its entirety:

> Company's response:    This assertion should be stricken because it directly contradicts Plaintiff's deposition testimony, in which he testified that when he was questioned about the 68-pound mix, he did not deny making it (Pl. Tr. I, 201).

There is nothing on page 201 of the Plaintiff's deposition that even addresses this question. On the previous page of this deposition, which Respondent did not include with its motion, the Plaintiff testified that, when he was initially surprised with the accusation that he had produced a 68-pound mix, he did not immediately deny making the mix. He merely stated that he did not know what the Defendant was talking about. As reflected in paragraph 18 of the affidavit, the Plaintiff did deny making such a heavy mix in a formal disciplinary meeting with Zeena and Plant Manager Thomas Oliver. The fact that he denied making the heavy mix is corroborated by one of Respondent's supervisors, William Tivnan who reported, "Bob immediately said that this was not possible, there was not way he would have put that much in the pans". (W. Tivnan Dep. Ex. 63). There is no basis to strike this paragraph of the affidavit.

11.    The Defendant moves to strike a portion of paragraph 20 of the Plaintiff's affidavit. The Defendant cites no conflict between the affidavit and the Plaintiff's deposition testimony. Nor is it impermissible speculation that the mix could have been contaminated after he made it. Again this assertion is based on his experience and skill as a mixer and was confirmed by the testimony of his co-workers and supervisors. (Lebeau at 47-48; Oliver 2 at 105-106; Gustafson at 121-122).

12. In paragraph 22 of the Plaintiff's affidavit, he states, "At the meeting to discuss the contaminated mix, Phillip Gustafson and I reported that other employees who made contaminated mixes and/or failed to sign M.O.'s were not disciplined." The Defendant cites to deposition testimony in which the Plaintiff stated that Gustafson told Zeena that other employees had produced contaminated mixes (Briddell Dep. 223, lines 18-20). The Defendant contends that this constitutes a conflict because the Plaintiff did not mention in the deposition testimony that he and/or Gustafson also pointed out that other employees who failed to sign M.O.'s were not disciplined. However, the deposition testimony cited by the Defendant occurred in the context of questioning by Defendant's counsel regarding the contaminated mix. It is hardly surprising that the Plaintiff would not mention the M.O.'s in response to questions about the contaminated mix. This is not a conflict between the deposition and the affidavit.

Moreover, Zeena's notes state that the Plaintiff told him that most white mixes are contaminated and that he was not the only person who failed to sign and M.O. (Zeena Depo Ex. 105) Oliver also testified that he believed that at the time Briddell was being disciplined he made allegations that other people were contaminating mixes and were not disciplined. (Oliver 3 p.27) Furthermore, Gustafson explained that he reported that "other employees do not complete or fill out M.O's..... I said that I sometimes have done it myself". (Gustafson at 68-69)

Thus, there is no basis to strike this paragraph of the Plaintiff's affidavit.

13. The Defendant moves to strike portions of paragraph 24 and 25 of the Plaintiff's affidavit. The Defendant does not cite to any conflicts with the Plaintiff's deposition testimony. Instead, the Defendant contends that the Plaintiff's belief that his termination was based on his race, color, opposition to discrimination and union activity

10

are improper opinion, speculation and legal conclusions. The Defendant's request to strike these allegations is bizarre in light of its brief in support of summary judgement. In that memorandum, the Defendant suggested that summary judgement should be entered because the Plaintiff did not believe that he was disciplined or discharged because of his race or protected activity. (See Defendant's Brief at 2-3). According to the Defendant, there was no issue of disputed fact as to the Defendant's motive and that summary judgement was therefore required. (Id). In paragraphs, 24 and 25 the Plaintiff makes clear that there is such an issue of disputed fact. (See: Briddell 1 at 189-190, Briddell 2 at 285-1295, 302-306; 332-335). Since the Defendant has claimed that the Plaintiffs opinion is relevant, it cannot now be permitted to strike the accurate and complete recitation of this opinion.

## CONCLUSION

The Defendant has not cited a single instance in which the Plaintiff's affidavit is clearly and unambiguously contradicted by his deposition testimony. In many instances the affidavit is even corroborated by the Defendant's witnesses. Therefore, the Motion to Strike should be denied in its entirety.

RESPECTFULLY SUBMITTED,
THE PLAINTIFF

By: _____
Mary E. Kelly
Thomas W. Meiklejohn
Livingston, Adler, Pulda,
Meiklejohn & Kelly, P.C.
557 Prospect Avenue
Hartford, CT 06105-2922
(860) 233-9821

# EXHIBIT A



Page 1

```
1             UNITED STATES DISTRICT COURT
2               DISTRICT OF MASSACHUSETTS
3
4    _____
5    ROBERT BRIDDELL                    *
6        Plaintiff,                     *
7    V.                                 *
8    SAINT GOBAIN ABRASIVES, INC.       *
9        Defendants.                    *
10   _____*
11
12
13
14         DEPOSITION OF:  MICHAEL TIVNAN
15       CATUOGNO COURT REPORTING SERVICES
16               446 Main Street
17           Worcester, Massachusetts
18         June 14, 2005      10:15 a.m.
19
20
21               Sonya Lopes
22       Certified Shorthand Reporter
23
24
```

Page 95

1  approximately how many -- I've heard the bonded
2  and super abrasives departments. Are those two
3  separate departments? Are they considered one
4  department?
5        A.    Two separate.
6        Q.    The bonded department, do you know
7  approximately how many employees they had in
8  2001/2002 time period?
9        A.    Couple hundred maybe.
10       Q.    What about super abrasives?
11       A.    I don't even know where that is.
12 It's -- I don't know.
13       Q.    Do you know how -- and the bonded
14 department, about how many supervisors did they
15 have?
16       A.    Dozen, ten.
17       Q.    Any of them African American?
18       A.    Not now.
19       Q.    Any time after Saint Gobain bought
20 Norton, any of them African American?
21       A.    No.
22       Q.    In the -- how about Hispanic, if
23 you know? Any of them Hispanic?
24       A.    No.

Page 96

```
 1        Q.      Any of them after Saint Gobain
 2   bought Norton Hispanic?
 3        A.      Not that I recall, no.
 4        Q.      Are -- anywhere else in the plant
 5   as a whole -- and I understand you might not know
 6   everything --
 7        A.      No.
 8        Q.      -- are you aware of any African
 9   American or Hispanic supervisors after Saint
10   Gobain took over Norton?
11        A.      No.
12        Q.      Do you recall an incident where a
13   figure, doll, whatever -- better word, little
14   puppet in a white sheet with a noose around it's
15   neck -- was hung on a board?
16        A.      No.
17                MR. KERMAN: Say that again.
18                MS. KELLY: I can show you what I
19        believe is a picture of something with a
20        rope around its neck was hung. Here. Mark
21        this, the last page.
22
23                (Exhibit 11, photocopied
24                photograph, marked)
```

## CERTIFICATE OF SERVICE

    This is to certify that on June 7, 2006 a copy of the foregoing Plaintiff's Opposition to Motion to Strike Affidavit was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

_____
Mary E. Kelly
Thomas W. Meiklejohn
Livingston, Adler, Pulda
Meiklejohn & Kelly, P.C.
557 Prospect Avenue
Hartford, CT 06105
Phone: (860) 233-9821
Fax: (860) 232-7818
E-mail: mekelly@lapm.org